THOMAS, Circuit Judge:
 

 In this appeal, we consider (1) whether a state court modification of the bankruptcy automatic stay binds federal courts; and (2) whether the automatic stay enjoins a criminal prosecution for the willful failure to pay child support. We hold that federal courts are not bound by state court modifications of the automatic stay, but that the automatic stay does not enjoin state criminal prosecutions.
 

 I
 

 It is not an inspirational tale. A divorce decree obligated Robert Gruntz to pay the relatively modest sum of $300 a month in child support. He failed to do so and ultimately filed a Chapter 13 petition in bankruptcy. Under his confirmed reorganization plan, he was to pay $300 per month as continuing child support, plus $291 a month toward the discharge of an accrued $5,100 in past due child support payments. Gruntz began making the payments to the trustee, but the case was converted to Chapter 11. Accordingly, the Chapter 13 trustee did not disburse the child support payments to Gruntz’s ex-spouse. Frustrated, she took her complaints to the Los Angeles District Attorney, who filed a misdemeanor criminal complaint charging Gruntz with violation of California Penal Code § 270 (failure to support dependent children). A jury convicted Gruntz.
 

 After conviction, Gruntz filed an adversary complaint against the County of Los Angeles (“County”) in bankruptcy court and sought a temporary restraining order to prevent the state court from proceeding with sentencing. The bankruptcy court declined the invitation to restrain the state proceedings, and Gruntz received a sentence of 360 days in jail. The California Court of Appeal affirmed his conviction.
 
 See People v. Gruntz,
 
 29 Cal.App.4th 412, 35 Cal.Rptr.2d 55 (1994). While Gruntz’s criminal appeal was pending, he suffered a second conviction for violating California Penal Code § 270 and was also convicted for violating California Penal Code § 166.4 (failure to obey a state court order).
 

 Subsequently, Gruntz filed the instant adversary proceeding against the County in bankruptcy court, requesting the court to declare the state criminal proceedings void as violative of the automatic stay imposed under 11 U.S.C. § 362. The bankruptcy court dismissed the complaint as collaterally estopped by the state judgment. On appeal, the district court af
 
 *1078
 
 firmed the dismissal on the basis of the
 
 Rooker-Feldman
 
 doctrine.
 
 [1]
 

 A divided three-judge panel of this court reversed, holding that the
 
 Rooker-Feld-man
 
 doctrine did not preclude the bankruptcy court from determining whether the conviction was void because the criminal proceedings violated the automatic stay.
 
 See Gruntz v. County of Los Angeles,
 
 177 F.3d 728 (9th Cir.1999). We vacated the panel’s decision and agreed to rehear the appeal en banc.
 

 II
 

 Because
 
 Rooker-Feldman
 
 arises from federal jurisdictional statutes, the threshold question is whether the doctrine allows federal courts to entertain these adversary proceedings at all. In this appeal, the County contends that the state court’s judgment included a determination that the automatic stay did not enjoin the state criminal proceedings. Therefore, the County reasons, if a state court has concluded that the bankruptcy automatic stay does not apply, the resulting state judgment divests federal courts of jurisdiction to consider that question. Deciding whether the
 
 Rooker-Feldman
 
 doctrine has such an effect is not a simple matter and requires an examination of the federal district court’s general, bankruptcy, and ha-beas corpus jurisdiction.
 

 At its core, the
 
 Rooker-Feldman
 
 doctrine stands for the unremarkable proposition that federal district courts are courts of original, not appellate, jurisdiction.
 
 See
 
 28 U.S.C. §§ 1381, 1332. Thus, it follows that federal district courts have “no authority to review the final determinations of a state court in judicial proceedings.”
 
 Worldwide Church of God v. McNair,
 
 805 F.2d 888, 890 (9th Cir.1986). Direct federal appellate review of state court decisions must occur, if at all, in the Supreme Court.
 
 See
 
 28 U.S.C. § 1257.
 

 Rooker-Feldman
 
 is not a constitutional doctrine. Rather, the doctrine arises out of a pair of negative inferences drawn from two statutes: 28 U^.C. § 1331, which establishes the district court’s “original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States”; and 28 U.S.C. § 1257, which allows Supreme Court review of “[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had.”
 
 [2]
 

 Rooker
 
 itself relied upon “the legislation of Congress,” namely the predecessors of these statutes in the Judicial Code.
 
 See Rooker,
 
 263 U.S. at 416, 44 S.Ct. 149 (con
 
 *1079
 
 struing Judicial Code, § 287, ch. 448, § 2, 39 Stat. 726 (1916)) (current version at 28 U.S.C. § 1257 (1988)), and Judicial Code, § 24, ch. 231, § 24, 36 Stat. 1091 (1911) (current version at 28 U.S.C. § 1331 (1980));
 
 see also Feldman,
 
 460 U.S. at 476, 103 S.Ct. 1303 (construing 28 U.S.C. § 1257);
 
 cf. ASARCO Inc. v. Radish,
 
 490 U.S. 605, 622, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) (“The
 
 Rooker-Feldman
 
 doctrine interprets 28 U.S.C. § 1257 as ordinarily barring direct review in the lower federal courts of a decision reached by the highest state court.... ”). Since
 
 Feldman,
 
 the Supreme Court has declined opportunities to extend, or even apply, the doctrine.
 
 [3]
 

 Of course, the statutes that form the basis of the
 
 Rooker-Feldman
 
 doctrine coexist among other federal jurisdictional laws. To derive a coherent theory of federal jurisdiction, one must consider the entire federal jurisdictional constellation. In this case, aside from the statutes of general jurisdiction, two other fixed jurisdictional stars draw our attention: the fed-' eral law of habeas corpus and bankruptcy.
 

 It is well-settled that the
 
 Rooker-Feldman
 
 doctrine does not touch the writ of habeas corpus.
 
 See Plyler v. Moore,
 
 129 F.3d 728, 732 (4th Cir.1997);
 
 Ritter v. Ross,
 
 992 F.2d 750, 753 (7th Cir.1993);
 
 Blake v. Papadakos,
 
 953 F.2d 68, 71 n. 2 (3d Cir.1992). Indeed, federal habeas-corpus law turns
 
 Rooker-Feldman
 
 on its head. Rather than leaving state court judgments undisturbed, it provides expressly for federal collateral review of final state court judgments,
 
 see, e.g.,
 
 28 U.S.C. § 2254, and requires exhaustion of state remedies as a precondition for federal relief,
 
 see
 
 28 U.S.C. § 2254(b)(1)(A). As we shall discuss when examining the merits of this appeal, through the statutory writ of habeas corpus Congress has created a comprehensive system of federal collateral review of state court criminal judgments. Thus, habeas corpus is not an “exception” to
 
 Rooker-Feldman,
 
 but a procedure with roots in statutory jurisdiction parallel to- and in no way precluded by-the doctrine.
 

 So, too, it is with bankruptcy law. In apparent contradiction to the
 
 Rooker-Feldman
 
 theory, bankruptcy courts are empowered to avoid state judgments,
 
 see, e.g.,
 
 11 U.S.C. §§ 544, 547, 548, 549; to modify them,
 
 see, e.g.,
 
 11 U.S.C. §§ 1129, 1325; and to discharge them,
 
 see, e.g.,
 
 11 U.S.C. §§ 727, 1141, 1328. By statute, a post-petition state judgment is not binding on the bankruptcy court to establish the amount of a debt for bankruptcy purposes.
 
 See
 
 11 U.S.C. § 109(e);
 
 Slack v. Wilshire Ins. Co. (In re Slack),
 
 187 F.3d 1070, 1073 (9th Cir.1999),
 
 as amended
 
 1999 WL 694990 (Sept. 9, 1999).
 

 Thus, final judgments in state courts are not necessarily preclusive in United States bankruptcy courts. Indeed, the rule has long stood that “[a] state court judgment entered in a case that falls within the federal courts’ exclusive jurisdiction is subject to collateral attack in the federal courts.”
 
 Gonzales v. Parks (In re Gonzales),
 
 830 F.2d 1033, 1036 (9th Cir.1987). The United States Supreme Court explained in
 
 Kalb v. Feuerstein,
 
 308 U.S. 433, 438-39, 60 S.Ct. 343, 84 L.Ed. 370 (1940):
 

 It is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral at
 
 *1080
 
 tack. But Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally-
 

 As Representative Kastenmeier further noted in discussing the Bankruptcy Code:
 

 State law rights arising in core bankruptcy proceedings are functionally equivalent to congressionally created rights, because Congress has the power to modify State law rights in bankruptcy proceedings. Unlike the States, Congress may impair the obligation of contracts through the bankruptcy clause. Indeed, the very purpose of bankruptcy is to modify the rights of debtors and creditors, and the bankruptcy code authorizes the bankruptcy court to abrogate or modify State-created obligations in many ways.
 

 130 Cong. Rec. HI 110 (daily ed. Mar. 20, 1984).
 

 Congress’s plenary power over bankruptcy derives from the constitutional imperative “[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States.” U.S. Const., Art. I, § 8. “The Constitution grants Congress exclusive power to regulate bankruptcy and under this power Congress can limit that jurisdiction which courts, State or Federal, can exercise over the person and property of a debtor who duly invokes the bankruptcy law.”
 
 Kalb,
 
 308 U.S. at 439, 60 S.Ct. 343. In furtherance of this charge, jurisdiction and authority over bankruptcies has been vested, from the beginning of the Republic, in the federal district courts.
 
 See, e.g.,
 
 Bankruptcy Act of 1800, § 2, 2 Stat. 19, 21; Bankruptcy Act of 1841, § 6, 5 Stat. 440, 445; Bankruptcy Act of 1867, § 1, 14 Stat. 517, 517; Bankruptcy Act of 1898, § 2, 30 Stat. 544, 545.
 

 The current bankruptcy jurisdictional statute, 28 U.S.C. § 1334, expands the historic role of the federal district courts in bankruptcy.
 
 [4]
 
 District courts have
 
 “original and exclusive
 
 jurisdiction of all cases under title 11.” 28 U.S.C. § 1334(a) (emphasis added). By the plain wording of the statute, Congress has expressed its intent that bankruptcy matters be handled exclusively in a federal forum.
 
 See MSR Exploration, Ltd. v. Meridian Oil, Inc.,
 
 74 F.3d 910, 913 (9th Cir.1996). In short, “ ‘Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.’ ”
 
 Celotex Corp. v. Edwards,
 
 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (quoting
 
 Pacor, Inc. v. Higgins,
 
 743 F.2d 984, 994 (3d Cir.1984)).
 

 Not all matters related to bankruptcies fall within the orbit of those subject to federal plenary power. In this respect, the distinctions made between “core” and “non-core” proceedings in the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 340, are instructive. The 1984 Act was passed, in part, in response to
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 71, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which distinguished between the “restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power,” and “the adjudication of state-created private rights.” As to the latter function, the Court held that Congress did not have the power to grant jurisdiction to the Article I bankruptcy courts over proceedings related to a bankruptcy case involving rights “created by state law” and “independent of and antecedent to the reorganization petition
 
 *1081
 
 that conferred jurisdiction upon the Bankruptcy Court.”
 
 Id.
 
 at 84, 102 S.Ct. 2858. However, as to the former, the Court noted that “[o]f course, bankruptcy adjudications themselves, as well as the manner in which the rights of debtors and creditors are adjusted are matters of federal law.”
 
 Id.
 
 at 84 n. 36, 102 S.Ct. 2858.
 

 Thereafter, Congress defined and distinguished “core” and “non-core” proceedings in the 1984 Act.
 
 See
 
 28 U.S.C. § 157.
 
 [5]
 
 In general, a “core proceeding” in bankruptcy is one that “invokes a substantive right provided by title 11 or ... a proceeding that, by its nature, could arise only in the context of a bankruptcy case.”
 
 Wood v. Wood (In re Wood),
 
 825 F.2d 90, 97 (5th Cir.1987). “Non-core proceedings” are those not integral to the restructuring of debtor-creditor relations and not involving a cause of action arising under title 11.
 
 See Windsor Communications Group, Inc. v. Grant (In re Windsor Communications Group),
 
 75 B.R. 713, 721 (E.D.Pa.1985). Under the 1984 Act, bankruptcy judges may hear and decide core proceedings.
 
 See
 
 28 U.S.C. § 157(b)(1). However, bankruptcy judges may only propose findings of fact and conclusions of law to federal district courts as to non-core proceedings related to a case under title 11.
 
 See
 
 28 U.S.C. § 157(c)(1). Thus, the separation of “core” and “non-core” proceedings in the 1984 Act creates a distinction between those judicial acts deriving from the plenary Article I bankruptcy power and those subject to general Article III federal court jurisdiction.
 

 Central to the bankruptcy “case” as to which exclusive Article I federal jurisdiction lies is the automatic stay imposed by 11 U.S.C. § 362(a). Congress has declared that actions to “terminate, annul, or modify” the automatic stay are core bankruptcy proceedings. 28 U.S.C. § 157(b)(2)(G). The “automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor’s assets for repayment and reorganization of his or her obligations.”
 
 MacDonald v. MacDonald (In re MacDonald),
 
 755 F.2d 715, 717 (9th Cir.1985). By halting all collection efforts, the stay affords the debt- or time to propose a reorganization plan, or simply “to be relieved of the financial pressures that drove him into bankruptcy.”
 
 Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters.),
 
 96 F.3d 346, 351 (9th Cir.1996) (quoting S.Rep. No. 95-989, at 54-55 (1978),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5787, 5840-41). The automatic stay also “assures creditors that the debtor’s other creditors are not racing to various courthouses to pursue independent remedies to drain the debtor’s assets.”
 
 Dean v. Trans World Airlines, Inc.,
 
 72 F.3d 754, 755-56 (9th Cir.1995);
 
 see also
 
 H.R.Rep. No. 95-595, at 340,
 
 reprinted in part in
 
 1978 U.S.C.C.A.N. 5787, 6297.
 

 The automatic stay is self-executing, effective upon the filing of the bankruptcy petition.
 
 See
 
 11 U.S.C. § 362(a);
 
 The Minoco Group of Companies v. First State Underwriters Agency of New England Reinsurance Corp. (In re The Minoco Group of Companies),
 
 799 F.2d 517, 520 (9th Cir.1986). The automatic stay sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and “any act to collect, assess or recover a claim against the debtor that
 
 *1082
 
 arose before the commencement of the case.” 11 U.S.C. § 362(a)(6).
 

 The automatic stay is an injunction issuing from the authority of the bankruptcy court, and bankruptcy court orders are not subject to collateral attack in other courts.
 
 See Celotex Corp.,
 
 514 U.S. at 313, 115 S.Ct. 1493. That is so not only because of the “comprehensive jurisdiction” vested in the bankruptcy courts,
 
 see id.
 
 at 308, 115 S.Ct. 1493, but also because “ ‘persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.’”
 
 Id.
 
 at 306, 115 S.Ct. 1493 (quoting
 
 GTE Sylvania, Inc. v. Consumers Union of United States, Inc.,
 
 445 U.S. 375, 386, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980)). In this case, as in most bankruptcy cases, the bankruptcy court notified the creditors, including the complaining witness in the criminal proceedings, of the applicability of the stay.
 

 Any state court modification of the automatic stay would constitute an unauthorized infringement upon the bankruptcy court’s jurisdiction to enforce the stay. “While Congress has seen fit to authorize courts of the United States to restrain state-court proceedings in some special circumstances,” such as the automatic stay, “it has in no way relaxed the old and well-established judicially declared rule that state courts are completely without power to restrain federal-court proceedings in in personam actions.”
 
 Donovan v. City of Dallas,
 
 377 U.S. 408, 412-13, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964) (footnote omitted). Although
 
 Donovan
 
 discussed this rule as applied to in personam actions, its holding applies even more strongly to federal in rem proceedings under the Bankruptcy Code, in which a “federal court having custody of such property has exclusive jurisdiction to proceed.”
 
 Id.
 
 at 412, 84 S.Ct. 1579;
 
 see also Hong Kong & Shanghai Banking Corp. v. Simon (In re Simon),
 
 153 F.3d 991, 996 (9th Cir.1998).
 

 For these reasons, actions taken in violation of the automatic stay are void.
 
 See Schwartz v. United States (In re Schwartz),
 
 954 F.2d 569, 571 (9th Cir.1992). Further,
 
 “[jjudicial proceedings
 
 in violation of th[e] automatic stay are void.”
 
 Phoenix Bond & Indemnity Co. v. Shamblin (In re Shamblin),
 
 890 F.2d 123, 125 (9th Cir.1989) (emphasis added).
 
 [6]
 
 As the Supreme Court explained in
 
 Kalb,
 
 discussing the weaker predecessor statute to 11 U.S.C. § 362(a), “[bjecause that State court had been deprived of all jurisdiction or power to proceed with the foreclosure, [all acts in aid of colleetion]-to the extent based upon the court’s actions-were all without authority of law.”
 
 Kalb,
 
 308 U.S. at 443, 60 S.Ct. 343. We reached a similar conclusion in
 
 Noli v. Commissioner of Internal Revenue,
 
 860 F.2d 1521 (9th Cir.1988), reasoning that, “because only an order of the bankruptcy court can authorize any further progress in the stayed proceedings, it follows that the continuation of the [stayed] proceeding can derive legitimacy only from the bankruptcy court order.”
 
 Id.
 
 at 1525 (quoting
 
 Casperone v. Landmark Oil & Gas Corp.,
 
 819 F.2d 112, 114 (5th Cir.1987)).
 

 Because of the bankruptcy court’s plenary power over core proceedings, the County’s argument that states have concurrent jurisdiction over the automatic stay under
 
 *1083
 
 28 U.S.C. § 1334(b) is unavailing. That section provides that the district courts “have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to a case under title 11.” Of course, nothing in that section vests the
 
 states
 
 with any jurisdiction over a core bankruptcy proceeding, including “motions to terminate, annul, or modify the automatic stay.” 28 U.S.C. § 157(b)(2)(G). The only grant of jurisdiction to do so involves the exercise of federal bankruptcy power. Indeed, the purpose of this section is not to create jurisdiction in non-bankruptcy courts, but to allow district courts in which the bankruptcy case is filed to adjudicate bankruptcy-related actions in which jurisdiction has been vested in other courts.
 
 See 1 Collier on Bankruptcy
 
 ¶ 3.01 [4], at 3-14, 3-15 (15th ed.1999).
 

 However, even assuming that the states had concurrent jurisdiction, their judgment would have to defer to the plenary power vested in the federal courts over bankruptcy proceedings. Indeed, that was precisely the issue in
 
 Kalb,
 
 in which the state was proceeding within its jurisdictional powers as to the subject matter, but in derogation of the federal bankruptcy stay. “A Congressional grant of exclusive jurisdiction to the federal courts includes the implied power to protect that grant.”
 
 Gonzales,
 
 830 F.2d at 1036.
 

 In sum, by virtue of the power vested in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay.
 
 [7]
 
 “The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land.”
 
 Kalb,
 
 308 U.S. at 439, 60 S.Ct. 343. Thus, the
 
 Rooker-Feldman
 
 doctrine is not implicated by collateral challenges to the automatic stay in bankruptcy.
 
 [8]
 
 A bankruptcy court simply does not conduct an improper appellate review of a state court when it enforces an automatic stay that issues from its own federal statutory authority. In fact, a reverse
 
 Rooker-Feldman
 
 situation is presented when state courts decide to proceed in derogation of the stay, because it is the state court which is attempting impermissibly to modify the federal court’s injunction.
 

 The rule urged by the County would undermine the principle of a unified federal bankruptcy system, as declared in the Constitution and realized through the Bankruptcy Code. If state courts were empowered to issue binding judgments modifying the federal injunction created by the automatic stay, creditors would be free to
 
 *1084
 
 rush into friendly courthouses around the nation to garner favorable relief. The bankruptcy court would then be stripped of its ability to distribute the debtor’s assets equitably, or to allow the debtor to reorganize financial affairs. “Such an exercise of authority would be inconsistent with and subvert the exclusive jurisdiction of the federal courts by allowing state courts to create their own standards as to when persons may properly seek relief in cases Congress has specifically precluded those courts from adjudicating.”
 
 Gonzales,
 
 830 F.2d at 1035. It is but slight hyperbole to say that chaos would reign in such a system.
 

 This is not to say that the
 
 Rook-er-Feldman
 
 doctrine or the related concepts of res judicata and collateral estoppel are wholly inapplicable in bankruptcy law. Preclusive effect is often extended to prepetition state judgments as to identical issues raised in subsequent bankruptcy proceedings.
 
 See, e.g., Grogan v. Garner,
 
 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991);
 
 Gayden v. Nourbakhsh (In re Nourbakhsh),
 
 67 F.3d 798, 801 (9th Cir.1995). When the bankruptcy court has lifted the stay, federal courts have given subsequent state decisions full faith and credit, “as they have by law or usage in the courts of such State.” 28 U.S.C. § 1738;
 
 see Gajkowski,
 
 888 F.2d at 299 (holding that, once the stay was lifted, the state court was free to proceed and its decision on the merits was binding on the bankruptcy court, but noting that the proceedings would have been void if bankruptcy court consent had not been obtained). In non-core proceedings that do not implicate substantive rights granted under title 11 or affect the administration of the bankruptcy case, the normal rules of preclusion, including the
 
 Rooker-Feldman
 
 doctrine, apply.
 

 However, modifying the automatic stay is not the act of a state court merely interpreting federal law; it is an intervention in the operation of an ongoing federal bankruptcy case, the administration of which is vested exclusively in the bankruptcy court.
 
 Rooker-Feldman
 
 does not allow a state court to interfere with the core administrative functions of an operative bankruptcy. Just as federal district courts are not part of the state appellate system, neither are state courts granted supervisory or appellate jurisdiction over federal courts. Thus,
 
 Rooker-Feldman
 
 does not nullify federal courts’ authority to enforce the automatic stay, nor does it strip us of jurisdiction to entertain this appeal.
 

 Ill
 

 Having concluded that the final decision concerning the applicability of the automatic stay must rest with the federal courts, we proceed to the merits of whether the stay applied to the criminal prosecution of Gruntz.
 
 [9]
 
 In examining this question, we turn to the other side of the jurisdictional coin: the proper role of federal bankruptcy courts, if any, in state criminal proceedings.
 

 We maintain the “deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings.”
 
 Kelly v. Robinson,
 
 479 U.S. 36, 47, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). This rule reflects a “fundamental policy against federal interference with state criminal prosecutions.”
 
 Younger v. Harris,
 
 401 U.S. 37, 46, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). It also recognizes that “[t]he right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States.”
 
 Kelly,
 
 479 U.S. at 47, 107 S.Ct. 353.
 

 With that philosophy in mind, we begin with an analysis of the statute. Although the automatic stay is extremely broad in scope, there are a number of statutory exceptions. Relevant to our case is the
 
 *1085
 
 exception provided in 11 U.S.C. § 362(b)(1), which provides:
 

 (b) The filing of a petition under section 301, 302 or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 does not operate as a stay—
 

 (1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor[.]
 

 This exception would seem to end the argument because, under its plain wording, the automatic stay would not apply to the criminal action initiated against Gruntz. However, Gruntz claims that the purpose of the criminal actions against him is debt collection, thus falling within the protection afforded by
 
 Hucke v. Oregon,
 
 992 F.2d 950 (9th Cir.1993).
 
 Hucke
 
 held that, if a criminal proceeding has the collection of a debt as its underlying aim, then the automatic stay imposed by 11 U.S.C. § 362(a)(6) would apply and the criminal action would be enjoined.
 
 See id.
 
 at 953. This is in accordance with the views of several commentators, who regard the exception contained in § 362(b)(1) as being limited to those proceedings “brought for the purpose of enforcing the criminal law.”
 
 See, e.g.,
 
 3
 
 Collier on Bankruptcy
 
 362-48 (15th ed.1999).
 
 [10]
 

 Although
 
 Hucke
 
 was well within the mainstream of thought at the time, it is time to reexamine it.
 
 [11]
 
 Other circuits have declined to follow our lead and, as this case demonstrates, it is a doctrine difficult to apply in practice. Most importantly, it is at odds with the plain words of the statute. Quite simply, the Bankruptcy Code declares that § 362 does not stay “the commencement or continuation of a criminal action or proceeding against the debtor.” On its face, it does not provide any exception for prosecutorial purpose or bad faith. If the statutory command of the Bankruptcy Code is clear, we need look no further: it must be enforced according to its terms.
 
 See United States v. Ron Pair Enterprises, Inc.,
 
 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Indeed, to do otherwise would insert phrases and concepts into the statute that simply are not there.
 

 Interpreting § 362(b)(1) as rendering the automatic stay as inapplicable to all criminal proceedings is consistent with “the provisions of the whole law, and to its object and policy.”
 
 Kelly,
 
 479 U.S. at 43, 107 S.Ct. 353. Not only does our notion of cooperative federalism caution against interference with ongoing state criminal proceedings, but the theory of bankruptcy law does as well. “The purpose of bankruptcy is to protect those in financial, not moral, difficulty.”
 
 Barnette v. Evans,
 
 673 F.2d 1250, 1251 (11th Cir.1982). The Bankruptcy Code reflects this philosophy. Although most state civil actions are subject to removal to bankruptcy courts, actions brought pursuant to a government’s police powers are not.
 
 See
 
 28 U.S.C. § 1452. Federal bankruptcy original, but non-exclusive, jurisdiction is limited to
 
 “civil
 
 proceedings.” 28 U.S.C. § 1334(b) (emphasis added).
 

 Gruntz contends that the purpose of bankruptcy would be thwarted if a criminal prosecution were allowed as a means of debt collection for dissatisfied creditors. However, there is “no rationale or justification for severing economic and noneco-nomic ramifications of the debtor’s crimi
 
 *1086
 
 nal conduct.” 3
 
 Collier on Bankruptcy
 
 362-48 (15th ed.1999). Further, in the case of the automatic stay, Congress has specifically subordinated the goals of economic rehabilitation and equitable distribution of assets to the states’ interest in prosecuting criminals. The State of California has chosen to criminalize a parent’s failure to support a dependent child.
 
 See
 
 CaLPenal Code § 270. That is a judgment reserved to the state; it is not for the bankruptcy court to disrupt that sovereign determination because it discerns an economic motive behind the criminal statute or its enforcement. In the automatic stay exception, Congress clearly has instructed federal courts not to allow bankruptcy proceedings to impede such an exercise of state police powers.
 
 [12]
 

 Further, any criminal prosecution of the debtor is on behalf of all the citizens of the state, not on behalf of the creditor.
 
 See Davis v. Sheldon (In re Davis),
 
 691 F.2d 176, 178-79 (3d Cir.1982). Once the state has made an independent decision to file criminal charges, the prosecution belongs to the government, not to the complaining witness. We cannot, and should not, “require a prosecutor to conduct a searching inquiry into the public spirit of the victim of a crime before proceeding with what appears to be an otherwise valid criminal prosecution.”
 
 Id.
 
 at 179.
 
 [13]
 
 “In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.”
 
 Bordenkircher v. Hayes,
 
 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). As the Supreme Court noted in
 
 Wayte v. United States,
 
 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), “[tjhis broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review.” This admonition applies with special force to federal enjoinment of state criminal actions, such as that urged by Gruntz, because the stay would interdict state prosecution at its inception, based upon a bankruptcy court’s surmise of the prosecutor’s “true” motives.
 

 There is, of course, a federal remedy for state court convictions obtained in violation of Constitution or statute: a writ of habeas corpus.
 
 See, e.g.
 
 28 U.S.C. §§ 2241, 2254. The federal habeas corpus statute was “explicitly and historically designed to provide the means for a state prisoner to attack the validity of his confinement.”
 
 Preiser v. Rodriguez,
 
 411 U.S. 475, 489, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). An adversary proceeding in bankruptcy is not.
 
 [14]
 
 Indeed, the Supreme
 
 *1087
 
 Court rejected a similar attempt to propagate additional avenues of federal relief for state prisoners in
 
 Preiser,
 
 holding that,
 

 when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate or speedier release ... his sole federal remedy is a writ of habeas corpus.
 

 Id.
 
 at 500, 93 S.Ct. 1827.
 

 Congress has provided for a comprehensive legislative scheme to provide state prisoners a post-conviction federal remedy to challenge their confinement. Any alternative relief that one might conjure from the general provisions of bankruptcy law must yield to specific habeas remedy that Congress created.
 
 Cf. id.
 
 at 490, 93 S.Ct. 1827 (noting that the § 1983 actions could not be employed to replace a true habeas remedy).
 

 There also is a procedural avenue to forfend state actions that are not subject to the automatic stay but that threaten the bankruptcy estate: a request for an injunction under 11 U.S.C. § 105. The bankruptcy court’s injunctive power is not limited by the delineated exceptions to the automatic stay, nor confined to civil proceedings.
 
 [15]
 
 However, the only fair reading of the Bankruptcy Code is that Congress did not intend the § 362(a) stay to enjoin all state criminal proceedings automatically. “The bankruptcy courts were not created as a haven for criminals.”
 
 Barnette,
 
 673 F.2d at 1251. The fresh start afforded debtors in bankruptcy does not include release from jail.
 

 In the end, this is not a chronicle of creditor and debtor, but of crime and punishment. Gruntz was lawfully prosecuted, convicted, and ordered to be incarcerated. As a matter of law, the automatic stay did not apply to prevent this course of events. The words of the statute mean what they say: all criminal proceedings, including those to which Gruntz was subject, are excepted from the reach of the automatic stay. Thus, unless a specific § 105 injunction applies, state trial courts need not seek bankruptcy court approval before commencing criminal proceedings. To the extent that it conflicts with this interpretation of 11 U.S.C. § 362(b)(1),
 
 Hucke
 
 is overruled.
 

 IV
 

 In sum, bankruptcy courts have the ultimate authority to determine the scope of the automatic stay imposed by 11 U.S.C. § 362(a), subject to federal appellate review. A state court does not have the power to modify or dissolve the automatic stay. Accordingly, the
 
 Rooker-Feldman
 
 doctrine does not render a state court judgment modifying the automatic stay binding on a bankruptcy court. Thus, if it proceeds without obtaining bankruptcy court permission, a state court risks having its final judgment declared void. In this case, the state court proceeded properly because the automatic stay does not apply to enjoin state criminal actions, even if the prosecution is motivated by the complaining witness’s desire to collect a debt.
 

 The veneer of this case suggested jurisdictional discord among the bankruptcy, federal habeas corpus and state court criminal systems; in reality, there is harmony. “Federalism in this nation relies in large part on the proper functioning of two separate court systems.”
 
 Davis,
 
 691 F.2d at 179. In turn, the operation of each system depends on freedom from unwarranted interference by the other. State criminal prosecutions should commence and continue unimpeded by the federal
 
 *1088
 
 bankruptcy courts. On the other hand, state courts should not intrude upon the plenary power of the federal courts in administering bankruptcy cases by attempting to modify or extinguish federal court orders such as the automatic stay.
 

 We also find concinnity among the relevant federal jurisdictional statutes. Congress established separate, but complementary, comprehensive statutory schemes governing federal habeas corpus and bankruptcy law.
 
 Rooker-Feldman,
 
 derived from the laws of general jurisdiction, does not supplant specific bankruptcy or habeas corpus jurisdiction.
 

 Although the
 
 Rooker-Feldman
 
 doctrine does not apply in this instance, the result is consistent with its philosophy of respect for state court decisions. Twice the State of California has elected to prosecute Mr. Gruntz, twice he has been convicted, and twice the state’s courts have duly sentenced him to a prison term. It is not the proper function of the bankruptcy court to disturb those decisions. Any post-conviction federal remedy lies in the writ of habeas corpus. Thus, both the bankruptcy court and the federal district court correctly concluded that the automatic stay did not void the state criminal judgments. We agree, albeit for different reasons.
 

 AFFIRMED
 

 [1]
 

 . The doctrine takes its name from
 
 Rooker v. Fidelity Trust Co.,
 
 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923),
 
 and District of Columbia Court of Appeals v. Feldman,
 
 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).
 
 Rooker
 
 held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the Supreme Court and is beyond the original jurisdiction of federal district courts.
 
 See
 
 263 U.S. at 415-16, 44 S.Ct. 149.
 
 Feldman
 
 held that this jurisdictional bar extends to particular claims that are “inextricably intertwined” with those a state court has already decided.
 
 See
 
 460 U.S. at 486-87, 103 S.Ct. 1303.
 

 [2]
 

 . The history of § 1331 elucidates the statutory, nonconstitutional dimension of the
 
 Rook-er-Feldman
 
 doctrine’s respect for state court resolution of federal questions. In the Republic's first century, aside from a year of general jurisdiction during the 1801 "Midnight Judges" episode, Congress chose to leave most federal questions to state courts.
 
 See, e.g.,
 
 Judiciary Act of 1789, § 9, 1 Stat. 73, 77. Following the Civil War, however, Congress granted the federal courts concurrent civil jurisdiction, subject to a $500 amount-in-controversy requirement, coextensive with the Article III, § 2 power over all cases "arising under the Constitution or laws of the United States.” Judiciary Act of 1875, § 1, 18 Stat. 470. After a century of minor revisions to the federal district courts' original jurisdiction, Congress eliminated the jurisdictional amount, creating today’s 28 U.S.C. § 1331.
 
 See
 
 Act of Dec. 1, 1980, Pub.L. No. 96-486, § 2(a), 94 Stat. 2369. Similarly, § 1257 reflects Congress’s choice to minimize federal clashes with state courts and its judgment that only the Supreme Court "had sufficient dignity to make federal review of state courts reasonably palatable.” David P. Currie,
 
 Res Judicata: The Neglected Defense,
 
 45 U. Chi. L.Rev. 317, 323 (1978).
 

 [3]
 

 . In
 
 Pennzoil Co. v. Texaco, Inc.,
 
 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), in which the Court required
 
 Younger
 
 abstention by federal courts pending resolution of the issue by state courts, five Justices expressly refused to apply
 
 Rooker-Feldman
 
 to a federal cause arising from state proceedings.
 
 See id.
 
 at 18, 107 S.Ct. 1519 (Scalia, J., joined by O'Connor, J., concurring);
 
 id.
 
 at 21, 107 S.Ct. 1519 (Brennan, J., concurring);
 
 id.
 
 at 28, 107 S.Ct. 1519 (Blackmun, J., concurring);
 
 id.
 
 at 31 n. 3, 107 S.Ct. 1519 (Stevens, J., concurring). More recently, the Court held
 
 Rooker-Feldman
 
 inapplicable to federal cases involving parties other than those before the state court, terming it an "abstention doctrine, under which a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court.”
 
 Johnson v. De Grandy,
 
 512 U.S. 997, 1005-06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994).
 

 [4]
 

 . By the powers afforded them under 28 U.S.C. § 157(a), district courts may refer cases and proceedings under title 11 to the bankruptcy courts, which are “unit[s] of the district court” pursuant to 28 U.S.C. § 151. All districts currently automatically refer bankruptcy cases to bankruptcy courts by local rule, as it was in this instance by C.D. Cal. Gen. Order 266 (Oct. 9, 1984) (since amended by Gen. Order 266-A (Feb. 13, 1995)).
 

 [5]
 

 . A non-exclusive list of "core” bankruptcy proceedings, set forth in 28 U.S.C. § 157(b), includes, among others: "matters concerning the administration of the estate”; "allowance or disallowance of claims against the estate”; "orders to turn over property of the estate”; "motions to terminate, annul, or modify the automatic stay”; "proceedings to determine, avoid, or recover fraudulent conveyances”; "determinations as to the dischargeability of particular debts”; "orders approving the sale of property”; and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.”
 

 [6]
 

 . Because, among other reasons, judicial proceedings in violation of the stay are void
 
 ab initio,
 
 the bankruptcy court is not obligated to extend full faith and credit to such judgments. Infirm judgments are not entitled to full faith and credit in federal courts.
 
 See Kremer v. Chemical Construction Corp.,
 
 456 U.S. 461, 482-83, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982);
 
 see also Matsushita Electric Indus. Co. v. Epstein,
 
 516 U.S. 367, 386, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996) (noting that state court judgments are binding only if the state court had power to enter the judgment). Judgments issued without authority are void as a matter of California state law and, therefore, can have no preclusive effect under 28 U.S.C. § 1738.
 
 See Plaza Hollister Ltd. Partnership v. County of San Benito,
 
 72 Cal.App.4th 1, 84 Cal.Rptr.2d 715, 728 (Cal.Ct.App.1999).
 

 [7]
 

 . For this reason, among others, the County’s reliance on dicta in
 
 Erti v. Paine Webber Jackson & Curtis, Inc. (In re Baldwin-United Corp. Litigation),
 
 765 F.2d 343 (2d Cir.1985), and
 
 NLRB v. Edward Cooper Painting, Inc.,
 
 804 F.2d 934 (6th Cir.1986), is misplaced. Those cases deal with the plenary power of federal— not state — courts concerning the automatic stay, and they recognize that, among federal courts, "[t]he necessary uniformity is best achieved by centralizing construction of the automatic stay in the Bankruptcy Court” subject to federal appellate review.
 
 Baldwin-United,
 
 765 F.2d at 349. In addition,
 
 Edward Cooper Painting
 
 recognized that the NLRB "proceeded at its own risk” with an unfair labor practice proceeding after imposition of the automatic stay. 804 F.2d at 940. The Sixth Circuit recognized that "[i]f it was later determined that the proceeding was not excepted from the automatic stay, the entire NLRB proceeding would be void ab initio as an act taken in violation of the stay.”
 
 Id.
 
 Thus, to the extent that either case is applicable, the holdings support our conclusions. The County has not been able to cite to a single case holding that a state court has the unilateral binding power to modify the federal automatic stay.
 

 [8]
 

 .
 
 See Appeal of Gajkowski (In re Highway Truck Drivers & Helpers Local Union
 
 #
 
 107),
 
 888 F.2d 293, 299 n. 9 (3d Cir.1989) (noting, in the context of a challenge to the automatic stay, that the
 
 "Rooker-Feldman
 
 doctrine does not preclude a collateral attack of state court proceedings or judgments in the context of an appeal involving an exclusive federal question”);
 
 compare Reitnauer v. Texas Exotic Feline Found., Inc. (In re Reitnauer),
 
 152 F.3d 341, 344 (5th Cir.1998) (applying
 
 Rooker-Feldman
 
 to bar district court review, in bankruptcy case, of state court judgment on state constitutional grounds).
 

 [9]
 

 . The bankruptcy court’s decision granting or denying relief from an automatic stay is a final decision which we review for an abuse of discretion.
 
 See Benedor,
 
 96 F.3d at 351. We review de novo the district court’s decision on an appeal from bankruptcy court.
 
 See id.
 

 [10]
 

 . Bankruptcy courts have attempted an array of tests for assaying any hint of a collector in the prosecutor's guise, such as examining the primary motivation for the prosecution or applying a "bad faith” test.
 
 See generally Brinkman v. City of Edina (In re Brinkman),
 
 123 B.R. 318, 322 (Bktcy.D.Minn.1991) (describing the various tests);
 
 see also Howard v. Allard,
 
 122 B.R. 696, 699 (Bktcy.W.D.Ky.1991) ("[Bankruptcy courts can, and should, enjoin such proceedings when the facts reveal they were initiated for the purpose of collecting debts”).
 

 [11]
 

 . The three-judge panel that considered this appeal was bound by
 
 Hucke;
 
 however, an en banc court is not.
 
 See Nghiem v. NEC Electronic, Inc.,
 
 25 F.3d 1437, 1441 (9th Cir.1994) (" ‘We are bound by decisions of prior panels' unless an en banc decision, Supreme Court decision or subsequent legislation undermines those decisions.' ”).
 

 [12]
 

 .This statutory brand of comity conforms with other federal legislation enabling state prosecutions for domestic arrearage. Congress itself has criminalized child support delinquency to the limits of its Commerce Clause powers in the Child Support Recovery Act of 1992, 18 U.S.C. § 228, and we have upheld the authority of federal courts to review and enforce, pursuant to the Act, those state court orders giving rise to such debts.
 
 See United States v. Mussari,
 
 95 F.3d 787 (9th Cir.1996). Furthermore, although Gruntz was incarcerated for his crime, the Bankruptcy Code permits restitution of child support under penal laws. Even in the absence of state or federal criminal prosecutions, Congress has prohibited discharge of child support debts under the Bankruptcy Code.
 
 See
 
 11 U.S.C. § 523(a)(5). Although it is inapplicable to these proceedings, the Bankruptcy Reform Act of 1994 amended the automatic stay provision to exempt actions for the collection of alimony, maintenance, or support.
 
 See
 
 11 U.S.C. 362(b)(2).
 

 [13]
 

 . In other contexts, we have eschewed general examination of prosecutorial motives.
 
 See Roe v. City and County of San Francisco,
 
 109 F.3d 578, 583-84 (9th Cir.1997) (affording prosecutorial immunity for decisions to refrain from prosecution);
 
 cf. Imbler v. Pachtman,
 
 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (affording absolute prose-cutorial immunity for decisions to prosecute).
 

 [14]
 

 . In fact, Congress first inserted, then removed, a provision that would have allowed bankruptcy courts to grant writs of habeas corpus in certain circumstances. The Bankruptcy Reform Act of 1978 specifically provided for a habeas remedy in bankruptcy court.
 
 See
 
 P.L. 95-598, Title II, § 250(a), Title III, § 314(j)(l), 92 Stat. 2672, 2677. The provision was scheduled to take effect on June 28,
 
 *1087
 
 1984, but the provision was deleted before its effective date by the Bankruptcy Amendments and Federal Judgeship Act of 1984.
 
 See
 
 P.L. 98-353, Title I, § 113, 98 Stat. 343.
 

 [15]
 

 . Other circuits have held that this authority must be exercised in conformance with the principles of
 
 Younger
 
 abstention.
 
 See Fussell v. Price (In re Fussell),
 
 928 F.2d 712, 715-16 (5th Cir.1991);
 
 Barnette,
 
 673 F.2d at 1251-52 (11th Cir.);
 
 Davis,
 
 691 F.2d at 177-78 (3d Cir.).