BETTY B. FLETCHER, Circuit Judge:
We are asked to decide whether the decision of a state administrative law judge (“ALJ”) regarding the scope of the automatic stay in bankruptcy precludes consideration of the issue by the federal bankruptcy court. We hold that pursuant to Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074 (9th Cir.2000) (en banc), the decision of the state ALJ does not preclude the bankruptcy court’s independent review.

I.

In September 1993, Robert Dunbar (“Dunbar”), on behalf of Concrete & Masonry Construction, Inc., entered into a written contract with Frank and Denise Martin (“Martins”) to install a concrete driveway, walkway, and patio at their home for $16,630. By the time Dunbar had completed the job in November 1993, the contract price had increased to $18,070, which the Martins paid in full. Almost two years later, on May 15, 1995, Dunbar and his wife, Kimberly Dunbar, (“debtors”) filed a voluntary Chapter 13 bankruptcy petition. The debtors did not list the Martins on their petition schedules.
In early 1996, the Martins noted that the concrete was beginning to crumble. The Martins requested Dunbar to repair the concrete or to pay for the cost of the repair. After unsuccessful efforts to get Dunbar to resolve the problem, the Martins filed a complaint (“agency complaint”) with the California Contractors’ State License Board (“CSLB”), presumably without knowledge of the debtors’ Chapter 13 filing. In September 1997, during the pen-dency of the investigation surrounding the agency complaint, the Martins sued Dunbar and the issuer of his contractor’s bond in state court asserting contract and tort causes of action (“civil complaint”).

A. State Administrative Hearing

An administrative hearing on the Agency Complaint was set for November 4, 1997. Rather than appear at the hearing, Dunbar sent a letter to the deputy attorney general, who represented the agency, seeking to stop the hearing on the basis that it was subject to an automatic stay pursuant to the bankruptcy laws. The ALJ treated the letter as a motion to terminate the administrative proceedings, and ruled that the bankruptcy filing did not preclude the state agency’s commencement of a disciplinary review of Dunbar’s actions as a state licensee.
The ALJ issued a “proposed order” in which it concluded that because the state agency was a governmental unit seeking to enforce its police or regulatory powers as codified under the California Business and Professions Code, the proposed disciplinary actions fell squarely within the automatic stay exception of 11 U.S.C. § 362(b)(4).[1]
Also in the proposed order, the ALJ found Dunbar guilty of poor workmanship, the consequence of which was that there were numerous “spalls” (chipped areas) in the concrete work that were “due to improper installation techniques or handling techniques” used by Dunbar, and the spall-ing was so excessive as to necessitate complete removal and replacement.
*1061 The CSLB, adopting the ALJ’s proposals, required Dunbar to pay “restitution” of $27,000 or replace the concrete work at no expense to the Martins. It also ordered that Dunbar pay the State its investigation expenses of $2,921.56, which were ruled by the ALJ to be post-petition expenses unaffected by bankruptcy discharge. He was also ordered to post a $30,000 contractor’s bond.

B. Challenge in Federal Court

The debtors commenced a proceeding against the CSLB in United States Bankruptcy Court seeking injunctive relief to prevent the CSLB from enforcing its order and revoking Dunbar’s contractor’s license. They also sought to prevent the Martins from going forward with their civil complaint.
The bankruptcy court concluded that the ALJ’s determination that the proceedings were excepted from the automatic stay was binding under principles of collateral estoppel and, accordingly, that no injunction should issue. With respect to the civil complaint, the bankruptcy court enjoined the Martins from proceeding against Dunbar.
Dunbar then appealed to the Bankruptcy Appellate Panel (“BAP”) which, on June 16, 1999, issued a decision vacating and remanding the decision of the bankruptcy court. The BAP based its decision partly on the rationale of the three judge panel in Gruntz v. County of Los Angeles (In re Gruntz), 111 F.3d 728 (9th Cir.1999) (opinion withdrawn). Subsequent to the opinion, the appeal was reheard and redecided en banc. Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074 (9th Cir. 2000) (en banc).

II.

 We review de novo a decision of the Bankruptcy Appellate Panel. United States Internal Revenue Serv. v. Palmer (In re Palmer), 207 F.3d 566, 567 (9th Cir.2000). On appeal from the BAP, this court independently reviews bankruptcy courts’ rulings. Mitchell v. Franchise Tax Bd. (In re Mitchell), 209 F.3d 1111, 1115 (9th Cir.2000). The denial of a preliminary injunction will be reversed only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. See Pmdential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 874 (9th Cir.2000). However, a de novo standard is applied to review questions regarding the availability of collateral estoppel. See Palmer, 207 F.3d at 567.

III.

A. Preclusion

The CSLB argues that the federal courts are bound to follow the ruling of the ALJ. Specifically, because the ALJ found that its proceedings fell into the “police or regulatory powers” exception to the automatic stay, 11 U.S.C. § 362(b)(4), the federal bankruptcy court was without power to reexamine that issue. Although the parties point to various legal theories — res judicata, collateral estoppel, and the Rook-er-Feldman doctrine — one issue is raised: once a state administrative agency decides that its actions do not fall within the scope of an automatic bankruptcy stay, are bankruptcy courts precluded from reexamining the issue?
The bankruptcy court found that it was precluded by the ALJ’s decisions. It denied Dunbar’s request for a preliminary injunction because Dunbar could not prove a likelihood of success on the merits because “the elements of collateral estoppel appear[ed] to be satisfied.” The court somewhat conclusorily weighed eight factors and decided that the decision of the state agency precluded further review. *1062 Because it was estopped, the bankruptcy court was compelled to deny the request for injunctive relief.
The BAP reversed this part of the lower court’s ruling, holding that “neither the so-called Rooker-Feldman doctrine nor principles of collateral estoppel apply to afford binding effect to an incorrect state court construction of the automatic stay.” Accordingly, it was error for the bankruptcy court not to consider the merits of the parties’ arguments regarding the scope of the automatic stay.
The BAP and the bankruptcy court issued their rulings and the parties filed their briefs to this court before the issuance of the en banc opinion in Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074 (9th Cir.2000) (en banc). Gruntz involved a Chapter 13 debtor who was prosecuted by the Los Angeles District Attorney, convicted for a misdemean- or failure to support his dependent children, and sentenced to 360 days in jail. Id. at 1077. Gruntz subsequently filed an adversary proceeding against the County in bankruptcy court, asking the court to declare the state proceedings void as viola-tive of the automatic stay. Id. As in the instant case, the bankruptcy court dismissed the complaint as collaterally es-topped by the state judgment. Id. The district court, acting in its appellate capacity, affirmed the dismissal on the basis of Rooker-Feldman. Id. at 1077-78.
The Gruntz en banc court carefully considered the “entire federal jurisdictional constellation” of laws, id. at 1079, and ruled that “the Rooker-Feldman doctrine is not implicated by collateral challenges to the automatic stay in bankruptcy” because Congress vested the federal courts with “the final authority to determine the scope and applicability of the automatic stay.” Id. at 1083.
The broad rule espoused in Gruntz, and the similarity of the issues[2] in that case to the immediate case compel us to rule, as did the Gruntz en banc panel, that “Rook-er-Feldman does not nullify federal courts’ authority to enforce the automatic stay, nor does it strip us of jurisdiction to entertain this appeal.” Id. at 1084. Thus, in this case the bankruptcy court erred and the BAP was correct.
Although the CSLB wrote its brief before Gruntz was finally decided, it argued the applicability of Gruntz to this case at oral argument. These arguments fail. Gruntz’ factual similarity and broad reasoning dictate our holding.
First, Gruntz involved a prior state court adjudication on the allegedly precluded issue, while this case involves the proposed order of an administrative agency. Nothing in the Gruntz opinion suggests that this distinction matters. Gruntz’s central premise is that Congress has plenary power over bankruptcy and vested that power exclusively in the dis *1063 trict courts. See id. at 1080; 28 U.S.C. § 1334(a). At least with respect to “core” bankruptcy proceedings (of which hearings to determine the scope of the automatic stay are a type) the federal courts have final authority. See id. at 1083. In fact, “actions taken in violation of the automatic stay are void” ab initio. Id. at 1082; Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992). If actions taken by a state court in violation of an automatic stay are void, so too must be analogous actions taken by the board of a state administrative agency.
Second, the Gruntz court identified three cases where action by a state might preclude subsequent action by bankruptcy courts. See Gruntz, 202 F.3d at 1084. None of these cases apply here. (1) This is a post-petition, not a pre-petition state judgment.[3] (2) This case does not involve the lifting of the stay by the bankruptcy court. (3) The case involves a core proceeding that implicates substantive rights granted under Title 11.
Third, Gruntz explicitly addresses Rooker-Feldman, not collateral estoppel or res judicata. Nevertheless, the rationale of Gruntz clearly applies to all three of these related doctrines. If the bankruptcy court had independently considered the question, it may have concluded that the administrative proceedings violated the automatic stay.[4] “Because [actions] in violation of the stay are void ab initio ... the bankruptcy court is not obligated to extend full faith and credit to” them. Id. at 1082 n. 6. “Judgments issued without authority are void as a matter of California state law and, therefore, can have no preclusive effect under 28 U.S.C. § 1738.” Id. “[B]y virtue of the power vested in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay.” Id. at 1083. The obligation to extend “full faith and credit” undergirds all three of the doctrines listed above; to say that the bankruptcy court need not give “full faith and credit” to a state ruling involving the automatic stay means that it need not be bound by res judicata and collateral estoppel as well as Rooker-Feldman.[5]
A final distinction between Gruntz and this case is that the debtor in Gruntz explicitly listed as a creditor, on his bankruptcy petition, the person who ultimately became the complaining witness in the criminal proceedings. In contrast, the Martins had not yet complained about their driveway when Dunbar declared bankruptcy and thus are not listed as creditors in the petition. The CSLB might argue that while the criminal court in Gruntz essentially modified the automatic stay, the ALJ in this case did not, because the original automatic stay did not apply to the Martins, nor the CSLB. This argument would misapprehend the nature of the au *1064 tomatic stay. The automatic stay is a broad injunction that stays “the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.” 11 U.S.C. § 362(a)(1). The stay applies to any creditor who might sue, and is not limited to creditors who are listed in the original petition. Gruntz involved a claim under 11 U.S.C. § 362(a)(6), which stays “any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.” In such cases, the creditors in question are usually ascertainable and known. Because 362(a)(1) creditors, on the other hand, often have yet to sue, they are naturally less ascertainable creditors. Nor does any of the reasoning of Gruntz rely on the fact that the creditors were alerted to the fact that an injunction existed.
Thus, we affirm the BAP’s holding that the bankruptcy court erred in finding itself precluded from reviewing the judgment of the ALJ.[6]

B. Exception from the Automatic Stay?

Dunbar asked the bankruptcy court for a preliminary injunction “enjoining the [CSLB], the Registrar of Contractors, and the Department of Consumer Affairs from canceling and rescinding Robert Dunbar’s contractor’s licenses.” Because the bankruptcy court incorrectly ruled that it was precluded from considering the issue, it never discussed the underlying merits: Do the CSLB actions in this case fall under the “police or regulatory powers” exception to the automatic stay embodied in § 362(b)(4)?
The BAP declined to reach this issue, remanding instead so the bankruptcy court could fully consider it. Appellees ask us to do the same. We agree with appellees that we should leave unaltered the disposition of the BAP and remand to the bankruptcy court to conduct hearings and make rulings on this issue.
CONCLUSION
We affirm the BAP’s opinion in light of Gruntz, and we leave undisturbed the disposition of the BAP, remanding the order denying injunctive relief to the bankruptcy court, to address the merits of Dunbar’s application.
AFFIRMED.

. Section 362(b)(4) provides, in pertinent part:
(b) The filing of a petition under section 301, 302, or 303 of this title ... does not operate as a stay—
(4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police or regulatory power ...;
11 U.S.C. § 362(b)(4).

. It is ironic that, although we now hold that Gruntz dictates a ruling in favor of appellees, appellees spend three pages of their brief distinguishing their case from the facts in Gruntz. Nonetheless, none of the distinctions raised by appellees suggests that Gruntz should not control. First, it makes no difference that child support, the source of the debt in Gruntz, is nondischargeable while the debt in this case is not. The Gruntz court did not rely on the nondischargeability of child support in its opinion. Second, appellees try to make an overly-formalistic distinction between administrative agencies and courts. As we discuss, infra, the distinction makes no difference in this inquiry. Finally, appellees discuss whether the state agency’s decision meets the requirements of collateral estoppel. Because the en banc opinion in Gruntz makes clear that state court errors, if any, in construing the automatic stay are void ab initio, there is no need to separately decide whether the state agency decision would otherwise be entitled to preclusive effect.

.On this point, it is necessary to emphasize that the judgment in this case was post-petition. The claim itself was probably pre-petition. Bankruptcy Court's Order on Injunctive Relief, ("[I]t is undisputed that the alleged negligent conduct which created a construction defect and damaged the property occurred at the time of construction in 1993, pre-petition. As a matter of law, the Martins' negligent construction claim was a pre-petition claim.”). This distinction is important because post-petition claims are not subject to the automatic stay.

. We express no opinion about whether the state action violated tire automatic stay. Infra, Part III(B).

. Rooker-Feldman is a jurisdiction-stripping doctrine while collateral estoppel and res ju-dicata are affirmative defenses that have nothing to do with a federal court’s jurisdiction. However, this distinction does not matter for our purposes. All three doctrines are premised on full faith and credit, and all three are impacted by the broad reasoning of Gruntz.

. The CSLB suggests that Dunbar waived his jurisdictional argument by not appearing at the administrative hearing. Dunbar did challenge the jurisdiction of the ALJ explicitly, in his letter to the deputy attorney general. Furthermore, the expansive holding of Gruntz suggests that state rulings on the scope of the automatic stay are subject to review regardless of Dunbar’s failure to fully litigate or appeal the issue at the state level.