**In re Mark R. HARTUNG and Terry L. Hartung, Debtors.**

No. 00–20550–7.

United States Bankruptcy Court,
D. Montana,
Butte Division.

Oct. 25, 2000.

R. Clifton Caughron, Helena, MT, for Debtors.

John H. Grant, Jackson, Murdo, Grant & McFarland, P.C., Helena, MT, for County Market.

Pam Bucy, Lisa Leckie, Deputy County Attorneys, Lewis and Clark County, Helena, MT, for Lewis & Clark County.

## *ORDER*

RALPH KIRSCHER, Bankruptcy Judge.

In this Chapter 7 case, after due notice, hearing was held October 24, 2000, at Butte on Debtor's Application for Preliminary Injunction and Motion for Order to Show Cause filed September 12, 2000, and on the Motion to Dismiss Lewis and Clark County Attorney from Preliminary Injunction and Order to Show Cause filed October 17, 2000. R. Clifton Caughron appeared on behalf of Debtors, John H. Grant appeared on behalf of County Market and Pam Bucy and Lisa Leckie appeared on behalf of Mike McGrath and the Lewis and Clark County Attorney's Office. In addition, Debtor Terry Hartung ("Terry") testified as did Frank Cannon, former general manager at County Market, and Pamela Bucy. No exhibits were offered into evidence. At the close of the hearing, the Court took the matter under advisement. The matter is ready for decision and after considering the facts and applicable law, the Court enters the following Findings of Fact, Conclusions of Law and Order.

## BACKGROUND

At the hearing held October 24, 2000, the parties agreed to the following facts, as set forth in Debtor's Application for Preliminary Injunction and Motion for Order to Show Cause and this Court's Order to Show Cause entered September 14, 2000:

1. On or about January 9, 2000, the Codebtor, Terry Hartung wrote check number 1266 to County Market in Helena, Montana in the amount of $440.86 on her business checking account at Mountain West Bank.

2. Mountain West Bank returned the check to County Market for insufficient funds, and County Market

thereafter assigned the check to Checkrite of Montana, Inc. (Checkrite) for collection, as agent for County Market. Checkrite thereafter began to pursue collection of the obligation from the Debtors on behalf of the County Market.

3. The Debtors filed a Petition in this Court under Chapter 7 of the Bankruptcy Code on the 9th day of March, 2000. The Debtors duly listed the obligation to Checkrite as an unsecured obligation for the NSF check to County Market.

4. On or about May 18, 2000, Danette L. Giono, on behalf of the County Market, swore out a complaint in the Justice Court for Lewis and Clark County, Montana, alleging that Terry had committed the misdemeanor offense of issuing a bad check.

5. On or about the 2nd day of June, 2000, Terry sent notice to the Justice Court and the County Attorney for Lewis and Clark County, advising them of Terry's case under Chapter 7 of the Bankruptcy Code which was then pending before this Court.

6. On or about June 14, 2000, Pam Bucy, Deputy County Attorney for Lewis and Clark County responded to Terry's Notice of Bankruptcy, alleging that Terry's restitution obligation cannot be discharged in bankruptcy.

7. On June 27, 2000, the Debtors received their discharge in this case.

8. On August 30, 3000, the Justice Court for Lewis and Clark County held a scheduled arraignment of Terry pursuant to the charge described above.[1]

Testimony at trial further established that when County Market submits deposits to its bank, the bank makes two at-

tempts to deposit checks on County Market's behalf. If a check is not honored within the two attempts, the bank immediately transmits the dishonored checks to Checkrite pursuant to County Market's instruction. Checkrite then attempts collection of the dishonored checks. If Checkrite is not successful with their collection attempts, they return the check to the payee, which in this case is County Market. Frank Cannon testified that once dishonored checks are returned, County Market writes the checks off as uncollectible debt on their profit and loss statement and submits the checks to the Lewis and Clark County Attorney's Office for criminal prosecution. Frank Cannon testified that dishonored checks are submitted to the County Attorney's office for two reasons: collection and to send a message that persons who write bad checks will be prosecuted.

Additionally, the testimony established that although Checkrite received notice of Debtors' Chapter 7 bankruptcy case, neither County Market nor the Lewis and Clark County Attorney's office received notification of Debtors' bankruptcy until sometime after May, 18, 2000. Counsel for the Lewis and Clark County Attorney's office represented that even if the County Attorney's office had known of Debtors' bankruptcy at the time it filed the criminal complaint against Terry, it would have proceeded in the same manner; confident the automatic stay provisions set forth in 11 U.S.C. § 362 do not apply in criminal proceedings by virtue of 11 U.S.C. § 362(b)(1).

Counsel for Debtors countered, asserting it is not the acts of the Lewis and Clark County Attorney's office which violate the automatic stay. Rather, it is County Market's referral of the matter to the County Attorney's office which violated the stay. Debtors argue that absent such violation by County Market, the County

---

1. The parties represented to the Court at the hearing that the trial in the criminal proceed-   ing is scheduled to be held November 1, 2000.

Attorney's office would not have received notice that Terry had written a dishonored check and as a result, Terry would not be subject to the pending criminal prosecution. In particular, Debtors' counsel maintains that acts in violation of the automatic stay are void *ab initio*,[2] and, therefore, the Lewis and Clark County Attorney's office cannot proceed with criminal prosecution of Terry.[3] In particular, Debtors argue that County Market cannot justify its collection efforts by hiding behind the exemption afforded the County Attorney's office under § 362(b)(1).

## APPLICABLE LAW

■ Under 11 U.S.C. § 362(a), the commencement of a case under the Bankruptcy Code stays all judicial proceedings against a debtor or property of the estate which could have been brought before the commencement of the case, except in those cases specifically enumerated in § 362(b). *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir.1990) ("[a] bankruptcy filing imposes an automatic stay of all litigation against the debtor."). The automatic stay provision "is designed to effect an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate." *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir.1993); *see also* 11 U.S.C. S 362(a). The importance of the automatic stay is discussed in the legislative history of § 362:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repay-

ment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 340–42 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 54–55 (1978); *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787 at 5840–41 and 6296–97.

■ Section 362(b), however, sets forth several exceptions to the general rule espoused in § 362(a). As explained in § 362(b), the commencement of a case under the Bankruptcy Code "does not operate as a stay—(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor." The Ninth Circuit Court of Appeals recently addressed the breadth of the above exception, holding the automatic stay does not apply to criminal proceedings, even if the debtor asserts that the underlying purpose of the criminal proceeding is simple debt collection. *In re Gruntz*, 202 F.3d 1074, 1085–87 (9th Cir. 2000) (overruling *Hucke v. Oregon*, 992 F.2d 950 (9th Cir.1993)).

## DISCUSSION

■ In the instant case, Debtors do not dispute that the Lewis and Clark County Attorney's office has the authority, under § 362(b)(1), to commence and/or continue with criminal proceedings against Debtors. Rather, Debtors assert that County Market's action of referring the criminal matter to the Lewis and Clark County Attorney's office was a violation of the automatic and as a consequence, any information given by County Market to the Lewis and Clark County Attorney's office is tainted and that the Lewis and Clark County Attorney's office cannot sustain its burden of proof in the criminal proceeding if Debtors are put back in the position they enjoyed prior to County Market's alleged violation of the automatic stay.

---

**2.** The term *ab initio* is a Latin term defined in BLACK'S LAW DICTIONARY, 2 (abridged 5th ed.1983), as "from the beginning; from the first act; from the inception".

**3.** In *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir.2000), the Ninth Circuit Court of Appeals noted that "actions taken in violation of the automatic stay are void."

In a case factually similar to the case *sub judice,* joint debtors wrote checks to four separate entities which were dishonored pre-petition. *In the Matter of Davis,* 691 F.2d 176 (3rd Cir.1982). One of the creditors instituted a criminal complaint against the debtors, prompting the debtors to file a bankruptcy petition. *Id.* The debtors did not list the other three creditors in their schedules and the creditors subsequently filed their own criminal complaints against the debtors. *Id.* at 177. At the request of one of the debtors, the four criminal proceedings were transferred from justice of the peace court to the court of Common Pleas, where prosecution of the complaints was assumed by the Attorney General. *Id.* Thereafter, the bankruptcy court in *Davis* denied the debtors' request for an injunction reasoning "a bankruptcy court 'should rarely, if ever, issue a permanent injunction against the enforcement of the criminal law' " and " '[t]he mere possibility that a creditor may recover all or part of a discharged debt ... after a debtor's conviction does not thwart the purposes of the bankruptcy laws.' " *Id.* The debtors appealed the decision of the bankruptcy court. The Third Circuit Court of Appeals specifically rejected the debtors' argument that the criminal proceedings were "fatally tainted" since the creditors filed their criminal complaints in an attempt to collect a debt, "rather than by a sense of public duty". *Id.* at 178. In affirming the decision of the bankruptcy court, the Court in *Davis* wrote:

> The Davises have made no showing that the Attorney General had any reason to doubt the validity of the charges, that he failed to exercise independent judgment in continuing these prosecutions, or that the complaining witnesses had insufficient evidence to support their allegations. We cannot require a prosecutor to conduct a searching inquiry into the public spirit of the victim of a crime before proceeding with what appears to be an otherwise valid criminal prosecution. Under these circumstances, the intentions of the complaining witnesses are not controlling in judging the good faith of a criminal prosecution. *See generally, Allee v. Medrano,* 416 U.S. 802, 836–38, 94 S.Ct. 2191, 2210–11, 40 L.Ed.2d 566 (1974) (opinion of Chief Justice Burger)[.]

* * *

> Therefore, federal courts must remain vigilant not to diminish the rightful prerogatives of their state counterparts, and should exercise their power to enjoin state criminal proceedings only with considerable caution and indeed only when proper cause has been shown. The appellants in this proceeding failed to demonstrate why the concerns of equity or comity would require, or even permit, the issuance of an injunction.

*Id.* at 179.

The Court agrees with the sound reasoning of the *Davis* decision. Under Debtors' argument, criminal prosecutors would be precluded from obtaining any evidence of criminal wrongdoing from potential creditors after a debtor files a bankruptcy petition. For example, if a debtor were to burglarize a store and then immediately file for protection under the Bankruptcy Code, the owner of the store would be in violation of the automatic stay if he or she reported the burglary and then subsequently identified the burglar/debtor. Such actions on behalf of the owner would, in all likelihood, lead to the prosecution of the burglar/debtor and ultimately, a sentence which could potentially include restitution. The protections afforded by § 362(a) are not so broad as to forestall a creditor's right to report a crime. Indeed, citizens have an obligation to report crimes in order to protect society and to maintain the integrity of our criminal justice system. Once a crime is reported, the county attorney's office then makes an independent decision as to whether criminal proceedings are warranted based upon the facts as presented. The

result urged by Debtors would impermissibly hinder prosecutors and interfere with a State's right to enforce its criminal statutes.

Furthermore, controlling authority in the jurisdiction instructs:

We maintain the "deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings." *Kelly v. Robinson*, 479 U.S. 36, 47, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). This rule reflects a "fundamental policy against federal interference with state criminal prosecutions." *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). It also recognizes that "[t]he right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States." *Kelly*, 479 U.S. at 47, 107 S.Ct. 353, 93 L.Ed.2d 216.

* * *

[A]ny criminal prosecution of the debtor is on behalf of all the citizens of the state, not on behalf of the creditor. *See Davis v. Sheldon (In re Davis)*, 691 F.2d 176, 178–79 (3d Cir.1982). Once the state has made an independent decision to file criminal charges, the prosecution belongs to the government, not to the complaining witness. We cannot, and should not, "require a prosecutor to conduct a searching inquiry into the public spirit of the victim of a crime before proceeding with what appears to be an otherwise valid criminal prosecution." *Id.* at 179. "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

* * *

In the end, this is not a chronicle of creditor and debtor, but of crime and punishment. Gruntz was lawfully prosecuted, convicted, and ordered to be incarcerated. As a matter of law, the automatic stay did not apply to prevent this course of events.

*In re Gruntz*, 202 F.3d 1074.

## CONCLUSION

In the case at bar, County Market did nothing more than fulfill its societal obligation to report a crime to the proper authorities. As aptly noted by the Court in *Gruntz*, this is a chronicle of crime and punishment and the automatic stay does not apply to prevent the course of events which have transpired. Simply put, "Bankruptcy courts were not created as a haven for criminals." *Gruntz*, 202 F.3d at 1087 (quoting *Barnette v. Evans*, 673 F.2d 1250 (11th Cir.1982)). Finally, Pamela Bucy testified that the purpose in prosecuting crimes arising under Mont.Code Ann. § 45–6–316 is threefold: rehabilitation; punishment; and restitution. These three purposes are all furthered by a ruling from this Court that County Market's action of reporting Terry's bad checks to the Lewis and Clark County Attorney's office was not a violation of the automatic stay. Accordingly,

IT IS ORDERED Debtor's Application for Preliminary Injunction and Motion for Order to Show Cause filed September 12, 2000, is denied; and the Motion to Dismiss Lewis and Clark County Attorney from Preliminary Injunction and Order to Show Cause filed October 17, 2000, is granted.