**FILED**

February 20 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

05-168

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 59

STATE OF MONTANA,

> Plaintiff and Appellee,

v.

CHRIS J. McWILLIAMS,

> Defendant and Appellant.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DC 2002-012
Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

> For Appellant:
>
> Stephen R. McCue, Debt Relief Law, Helena, Montana
>
> For Appellee:
>
> Hon. Mike McGrath, Montana Attorney General, Mark W. Mattioli,
> Assistant Attorney General, Helena, Montana
>
> Brett Linneweber, Park County Attorney, Livingston, Montana

Submitted on Briefs:  January 11, 2006

Decided:  February 20, 2008

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Chris McWilliams appeals his conviction in the District Court for the Sixth Judicial District, Park County, of issuing bad checks, a felony.  We affirm.

¶2    McWilliams raises four issues on appeal which we have restated as follows:

¶3    1.  Whether the District Court erred in denying McWilliams' pretrial motion to dismiss the Information charging him with issuing bad checks.

¶4    2.  Whether the District Court erred in denying McWilliams' motion for a directed verdict at the close of the State's case-in-chief.

¶5    3.  Whether the District Court erred in denying McWilliams' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

¶6    4.  Whether the District Court erred in sentencing McWilliams to pay restitution of sums that had been discharged by his bankruptcy proceeding.

### Factual and Procedural Background

¶7    A jury convicted McWilliams of issuing bad checks to Larry Johns, d/b/a Big Sky Consignment, and Robert Curry, d/b/a Curry and Sons Electric.  The facts surrounding the issuing of those checks are as follows.

¶8    In April 2001, McWilliams, d/b/a C & L Construction, agreed to construct a home for Dennis and Gwendolyn Noyes (the Noyeses) for the amount of $146,529.00.  The construction was to be financed by a loan from Empire Bank in Livingston.  The loan was initially approved in the amount of $169,000.00.

¶9    McWilliams had a business arrangement with Johns wherein McWilliams obtained a series of short term loans from Johns for $1,000.00 each.  At the time of each

2

loan, McWilliams gave Johns a check for $1,250.00. The checks were postdated to the date that repayment of the loan was due (typically 20 to 30 days after each loan was made). The additional $250.00 in each check was considered interest on the loan. In addition, with each loan, McWilliams and Johns executed a handwritten agreement wherein McWilliams agreed to convey to Johns the security interest in a flatbed trailer if the loan was not repaid in full. Johns made the last of these loans to McWilliams on December 26, 2001. In payment of that loan, McWilliams wrote Johns a check for $1,250.00 and postdated it for January 16, 2002.

¶10 McWilliams hired Curry as a subcontractor to do the electrical wiring on the Noyeses' home. Curry completed the rough-in wiring on the home in September or October 2001, and the finish electrical work in November or December 2001. On January 7, 2002, McWilliams went to Curry's home and wrote him a check in the amount of $4,920.64 for the electrical work on the Noyeses' home. Curry testified at trial that McWilliams told him that there currently were insufficient funds in the account to cover the check. McWilliams testified at trial that he wrote the check to Curry because he expected to receive a substantial final payment for the construction of the Noyeses' home within a few days.

¶11 McWilliams's wife, Angela, testified that on January 8, 2002, she heard a rumor that the Noyeses were not going to make the final payment for the construction of the home. Angela further testified that after several unsuccessful attempts to contact Dennis Noyes, they decided that Angela should seek the advice of someone from their bank. Angela visited the bank on January 9, 2002. She testified that she was advised that a stop

payment was better than an insufficient funds check, hence she stopped payment on both the check to Johns for $1,250.00 and the check to Curry for $4,920.64.

¶12 McWilliams and his wife had filed for Chapter 13 bankruptcy in May 1997. On January 24, 2002, they converted their Chapter 13 bankruptcy action to a Chapter 7. That same day, McWilliams was arrested on charges based upon allegations of another unpaid subcontractor who subsequently was paid. McWilliams was released the following day. One of the conditions of his release was that he close all of his checking accounts.

¶13 On January 31, 2002, Dennis Noyes contacted the Park County Sheriff's Department to file a complaint against McWilliams for theft in relation to various issues that had arisen in the construction of the home. At about the same time, Johns and Curry each brought complaints against McWilliams in relation to the check transactions described above.

¶14 In February 2002, the State brought criminal charges against McWilliams for theft and issuing bad checks. McWilliams was arrested on February 21, 2002, on these charges and released the same day. On April 29, 2002, McWilliams filed a motion to dismiss the Information charging him with issuing bad checks. The District Court denied the motion in writing but without written comment.

¶15 McWilliams received his Chapter 7 discharge in bankruptcy on May 14, 2002. Thereafter, McWilliams and his wife moved to Oregon. McWilliams alleged that Park County Attorney Tara DePuy had full knowledge of his move and that the District Court had given permission for the move. He further alleged that he advised the court of his address in Oregon and how to contact him.

4

¶16 On July 13, 2004, McWilliams was arrested in Deschutes County, Oregon, on a "Fugitive Information" issued by the Deschutes County District Attorney's Office based upon a teletype from DePuy. Trial was held in the Park County District Court from November 30, 2004 to December 2, 2004. At the close of the State's case-in-chief, McWilliams' counsel moved to dismiss the charges against McWilliams contending that the State had failed to meet its burden of proof. The District Court corrected counsel calling it a motion for a directed verdict and counsel agreed. The District Court denied the motion.

¶17 The jury acquitted McWilliams of the theft charge and found him guilty of the charge of Issuing Bad Checks, common scheme, a felony, in violation of § 45-6-316, MCA. Thereafter, McWilliams moved the court for judgment notwithstanding the verdict or, in the alternative, for a new trial. In his motion, McWilliams requested that, pursuant to § 46-16-702(3)(c), MCA, the court modify the jury's verdict by finding him not guilty on the charge of issuing bad checks. In the alternative, McWilliams requested that, pursuant to § 46-16-702(3)(b), MCA, the court grant him a new trial. The court denied McWilliams' alternative motions. The court subsequently deferred imposition of McWilliams' sentence for four years subject to various terms and conditions including that he pay restitution, that he not possess a checking account unless approved by his probation officer, and that he perform 100 hours of community service each year.

¶18 McWilliams appealed the various orders and judgment of the District Court, and requested a stay of the sentence pending appeal, which the court granted.

**Issue 1.**

5

¶19    *Whether the District Court erred in denying McWilliams' pretrial motion to dismiss the Information charging him with issuing bad checks.*

¶20    Shortly after the State filed the Information alleging that McWilliams committed the offense of issuing bad checks, McWilliams moved to dismiss the charge on the grounds that the series of transactions with Johns was an illegal series of deferred deposit loans within the meaning of Montana's Deferred Deposit Loan Act (the Act), Title 31, chapter 1, part 7, Montana Code Annotated. In addition, McWilliams argued that the check to Curry was also a deferred deposit loan as defined in § 31-1-703(5)(a), MCA. McWilliams contended that he could not be criminally prosecuted for issuing those checks based on § 31-1-723(2), MCA, which provides that a licensee making deferred deposit loans may not threaten to use a criminal process to collect on the loan made to a consumer in this State. The District Court denied his motion. McWilliams contends that the District Court erred and he renews these arguments on appeal.

¶21    The State argues that whether the loan to McWilliams from Johns violated the Act is a civil matter between McWilliams and Johns, and the Act does not foreclose the State from prosecuting a bad check case. In addition, the State argues that McWilliams' suggestion that the check to Curry constituted a deferred deposit loan is completely frivolous as the Act applies to loan arrangements and Curry was not a lender.

¶22    The denial of a motion to dismiss in a criminal case is a question of law and we review a district court's conclusions of law to determine whether those conclusions are correct. *State v. Tichenor,* 2002 MT 311, ¶ 18, 313 Mont. 95, ¶ 18, 60 P.3d 454, ¶ 18

6

(citing *State v. Hocevar,* 2000 MT 157, ¶ 115, 300 Mont. 167, ¶ 115, 7 P.3d 329, ¶ 115; *State v. Weaver*, 1998 MT 167, ¶ 43, 290 Mont. 58, ¶ 43, 964 P.2d 713, ¶ 43).

¶23     The statute McWilliams relies on to support his contention that he cannot be criminally prosecuted for issuing the checks to Johns and Curry provides in pertinent part:

> **Prohibited acts.**  A *licensee* making deferred deposit loans may not commit, or have committed on behalf of the licensee, any of the following prohibited acts:
> . . . .
> (2) threatening to use or using a criminal process in this or any other state to collect on the loan made to a consumer in this state or any civil process to collect the payment of deferred deposit loans not generally available to creditors to collect on loans in default . . . .  [Emphasis added.]

Section 31-1-723, MCA.  McWilliams fails to recognize that neither Johns nor Curry are licensees under this Act.

¶24     In addition, McWilliams relies on § 30-3-104, MCA, the statute defining negotiable instruments, to conclude that in order for an instrument to meet the definition of a "check" under Montana law, it must be payable on demand.  McWilliams argues that the checks to Johns and Curry were not payable on demand and were, instead, in the nature of a future promise, thus they were not checks within the meaning of § 30-3-104, MCA.  Contrary to McWilliams' assertions, neither check contained any type of restrictive endorsement and, although both Johns and Curry agreed to hold the checks for a short period of time, both checks were payable on demand.

¶25     McWilliams also argues that under § 45-2-211, MCA, consent is a defense and both Johns and Curry consented to hold the checks.  This argument is also without merit.

While Johns and Curry may have consented to take the checks and refrain from presenting them immediately, they did not consent to nonpayment of the checks or to having McWilliams stop payment on the checks altogether.

¶26  McWilliams cites *State v. Patterson*, 75 Mont. 315, 243 P. 355 (1926), in support of his contention that there has to be evidence of an intent to defraud at the time the check was given.  As the State points out in its brief on appeal, the statute in effect at the time *Patterson* was decided provided:

> Any person who, *with the intent to defraud*, shall make or draw or utter or deliver any check, draft, or order for the payment of money . . . knowing at the time that the maker or drawer has not sufficient funds in or credit with such bank or depository for the payment of such check, draft, or order, . . . shall be guilty . . . .

Section 11369, RCM (1921) (emphasis added).  In *Patterson*, the defendant obtained title to several horses after providing a postdated check.  The attorney general conceded that the conviction could not be sustained because the "gist of the action is the intent to defraud," and there was a lack of evidence to show such intent.  *Patterson*, 75 Mont. at 317, 243 P. at 355.

¶27  Montana's current statute does not contain an "intent to defraud" element.  Rather, § 45-6-316, MCA, provides in relevant part:

> **Issuing a bad check.** (1) A person commits the offense of issuing a bad check when the person issues or delivers a check or other order upon a real or fictitious depository for the payment of money knowing that it will not be paid by the depository.
> (2) If the offender has an account with the depository, failure to make good the check or other order within 5 days after written notice of nonpayment has been received by the issuer is prima facie evidence that the offender knew that it would not be paid by the depository.

8

Although there was evidence that McWilliams intended to deceive or defraud Johns by obtaining a duplicate title to the trailer to defeat Johns' security interest in the trailer, that evidence was not required to sustain a conviction for issuing bad checks.

¶28 Similarly, with respect to the check to Curry, the issue was not whether McWilliams defrauded Curry into providing electrical work, rather, the State was obliged to prove only that the check was issued "knowing that it will not be paid by the depository." Section 45-6-316(1), MCA.

¶29 As to the District Court's denial of McWilliams' motion to dismiss the Information filed against him, under § 7-4-2716(1), MCA, county attorneys in Montana are charged with a duty to conduct, on the State's behalf, all prosecutions for public offenses. In discharging that duty, a county attorney has broad discretion to determine whether to prosecute an offender and what offense to charge. *Tichenor*, ¶ 26 (citing *State ex rel. Fletcher v. Dist. Court*, 260 Mont. 410, 414-15, 859 P.2d 992, 995 (1993)).

¶30 An information

> is a written accusation of criminal conduct prepared by a prosecutor in the name of the State. The information must reasonably apprise the accused of the charges against him, so that he may have the opportunity to prepare and present his defense. We read the information, and the affidavit in support thereof, as a whole to determine the sufficiency of the charging documents. We apply the "common understanding" rule to determine if the charging language of a document allows a person to understand the charges against him. Under this standard, the test of the sufficiency of a charging document is whether the defendant is apprised of the charges and whether he will be surprised.

*State v. Wilson*, 2007 MT 327, ¶ 25, 340 Mont. 191, ¶ 25, 172 P.3d 1264, ¶ 25 (internal citations and quotation marks omitted).

¶31 This Court has held that "[l]eave to file an information shall be granted when probable cause exists that an offense has been committed by an identified suspect" and that "[d]istrict court judges should use their common sense when reviewing affidavits of probable cause." *State v. David*, 266 Mont. 365, 367-68, 880 P.2d 1308, 1310 (1994) (citing § 46-11-201, MCA; *State v. Thompson*, 243 Mont. 28, 30, 792 P.2d 1103, 1105 (1990)). Thus, "[t]he determination of whether a motion to file an information is supported by probable cause is left to the sound discretion of the trial court." *State v. Dunfee*, 2005 MT 147, ¶ 31, 327 Mont. 335, ¶ 31, 114 P.3d 217, ¶ 31.

¶32 In the case *sub judice*, the District Court had already granted the State's motion for leave to file an Information against McWilliams, thus establishing that the State had probable cause to bring the charges. The State had no further burden of proof with regard to these charges until trial. *Tichenor*, ¶ 22 (citing *State v. Nichols*, 1998 MT 271, ¶ 4, 291 Mont. 367, ¶ 4, 970 P.2d 79, ¶ 4 ("holding that the defendant's challenge to the evidence through a pretrial motion to dismiss 'was premature because such a challenge can only be made after the State has had an opportunity to present its evidence to the trier of fact' ")).

¶33 Accordingly, we hold that the District Court did not err in denying McWilliams' pretrial motion to dismiss the Information charging him with issuing bad checks.

**Issue 2.**

¶34 *Whether the District Court erred in denying McWilliams' motion for a directed verdict at the close of the State's case-in-chief.*

10

¶35 McWilliams' counsel moved for dismissal of the charges against McWilliams at the close of the State's case-in-chief. The District Court corrected counsel calling it a motion for a directed verdict and then denied the motion without comment.

¶36 Many Montana cases refer to a motion to dismiss for insufficient evidence as a "motion for a directed verdict" or a "motion for a directed verdict of acquittal." However denominated, these motions have a common denominator—i.e., that the prosecution has failed as a matter of law to prove the charges beyond a reasonable doubt; that the prosecution's evidence is insufficient as a matter of law. That said, there is no statutory authority for referring to a motion to dismiss for insufficient evidence as a "motion for a directed verdict" or a "motion for a directed verdict of acquittal." Section 46-16-403, MCA, provides:

> **Evidence insufficient to go to jury.** When, at the close of the prosecution's evidence or at the close of all the evidence, the evidence is insufficient to support a finding or verdict of guilty, the court may, on its own motion or on the motion of the defendant, *dismiss the action* and discharge the defendant. [Emphasis added.]

Accordingly, we will deem McWilliams' motion as a motion to dismiss for insufficient evidence made pursuant to § 46-16-403, MCA, and we will apply the same standard of review that we use in evaluating what have previously been denominated as "motions for a directed verdict of acquittal."[1]

¶37 The proper standard of review for the denial of a motion to dismiss for insufficient evidence (heretofore a "motion for a directed verdict of acquittal") is de novo. *State v.*

---

[1] We urge the Bench and Bar to refer to such motions in future cases by their correct name—i.e., "motions to dismiss for insufficient evidence."

*Skinner*, 2007 MT 175, ¶ 14, 338 Mont. 197, ¶ 14, 163 P.3d 399, ¶ 14 (citing *State v. Swann*, 2007 MT 126, ¶ 19, 337 Mont. 326, ¶ 19, 160 P.3d 511, ¶ 19). Furthermore, determinations of the credibility and weight of testimony are within the exclusive province of the jury, and conflicting testimony does not render the evidence insufficient to support a guilty verdict. *State v. Borsberry*, 2006 MT 126, ¶ 20, 332 Mont. 271, ¶ 20, 136 P.3d 993, ¶ 20 (citing *State v. Shields*, 2005 MT 249, ¶ 19, 328 Mont. 509, ¶ 19, 122 P.3d 421, ¶ 19).

¶38     As noted above, a person commits the offense of issuing a bad check if he "issues or delivers a check or other order upon a real . . . depository for the payment of money knowing that it will not be paid by the depository." Section 45-6-316, MCA. The State's evidence showed that McWilliams issued checks to Johns and Curry upon a real depository. Both Johns and Curry testified in the State's case-in-chief that they accepted checks from McWilliams and that those checks were not honored by McWilliams' bank because, in one case, there were insufficient funds in McWilliams' account, and, in the other case, because McWilliams had stopped payment on the check. Indeed, Curry testified that McWilliams told him that there were not sufficient funds in McWilliams' account to cover the check at the time it was issued and Johns testified that payment was stopped on his check. Viewing this evidence in a light most favorable to the prosecution as we are constrained to do, there was sufficient evidence upon which a rational trier of fact could find the essential elements of the crime of issuing bad checks beyond a reasonable doubt. *Skinner*, ¶ 14; *Swann*, ¶ 16.

¶39 Accordingly, we hold that the District Court did not err in denying McWilliams' motion to dismiss for insufficient evidence ("motion for a directed verdict of acquittal") at the close of the State's case-in-chief.

**Issue 3.**

¶40 *Whether the District Court erred in denying McWilliams' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.*

¶41 This Court has stated on numerous occasions that Montana's statutes governing criminal procedure do not provide for judgment notwithstanding the verdict. *State v. Bell*, 277 Mont. 482, 485, 923 P.2d 524, 526 (1996), *cert. denied*, 519 U.S. 1098, 117 S. Ct. 781 (1997) (citing *State v. Mummey*, 264 Mont. 272, 276, 871 P.2d 868, 870 (1994)). Instead, § 46-16-702, MCA, permits a defendant to move for a new trial following a verdict of guilty and permits the district court to modify or change the verdict by finding the defendant guilty of a lesser included offense or finding the defendant not guilty. *Bell*, 277 Mont. at 485, 923 P.2d at 526. We held in both *Bell* and *Mummey*, that the defendants' motions for judgment notwithstanding the verdict would be deemed motions for a new trial made under § 46-16-702, MCA. *Bell*, 277 Mont. at 485, 923 P.2d at 526; *Mummey*, 264 Mont. at 276, 871 P.2d at 870. Similarly, we deem McWilliams' motion for judgment notwithstanding the verdict as a motion for a new trial.

¶42 A decision to grant or deny a motion for a new trial lies within the sound discretion of the district court and we will not disturb that decision on appeal unless the

13

appellant demonstrates that the district court abused its discretion.[2] *State v. Grace*, 2001 MT 22, ¶ 23, 304 Mont. 144, ¶ 23, 18 P.3d 1008, ¶ 23 (citing *State v. Clay*, 1998 MT 244, ¶ 13, 291 Mont. 147, ¶ 13, 967 P.2d 370, ¶ 13)).

¶43 McWilliams argues that the prosecutor, in his closing arguments, made several assertions concerning Montana law that were inaccurate, and the jury relied upon those assertions in convicting McWilliams. These "inaccuracies" as delineated by McWilliams include: (1) commenting that "if it walks like a duck and quacks like a duck, it means it's usually a duck" (referring to whether the checks written to Johns and Curry met the definition of a check); (2) arguing that McWilliams had a duty to perform an act (reissuing the checks) that would have constituted the very crime with which he was charged; and (3) arguing that the act constituting the offense can be separated in time from the requisite state of mind for the offense.

¶44 McWilliams' counsel did not object to these statements at the time they were made, but instead, filed a motion for a new trial claiming that the jury misapplied the facts to the law "because the State's arguments told the jury that the law was something other than it is." The State argues on appeal that because McWilliams' trial counsel failed to contemporaneously object during the prosecution's closing argument, the objection was waived and we should not consider the issue on appeal.

---

[2] We review McWilliams' motion for a new trial in this case for abuse of discretion because he bases his motion on prosecutorial misconduct. We observe, however, that § 46-16-702, MCA, also authorizes the trial court to find the defendant guilty of a lesser included offense or find him not guilty based on "the weight of the evidence." Section 46-16-702(3)(c), MCA. Where a motion for a new trial under § 46-16-702, MCA, is based on sufficiency of the evidence, we review the grant or denial of that motion de novo. *State v. Ariegwe*, 2007 MT 204, ¶ 164, 338 Mont. 442, ¶ 164, 167 P.3d 815 ¶ 164 (citing *Giambra v. Kelsey*, 2007 MT 158, ¶¶ 24-27, 338 Mont. 19, ¶¶ 24-27, 162 P.3d 134, ¶¶ 24-27).

¶45 To be timely, an objection must be made as soon as the grounds for the objection become apparent. *Grace*, ¶ 35 (wherein this Court affirmed the district court's denial of a motion for a new trial) (citing *State v. Whitlow*, 285 Mont. 430, 442, 949 P.2d 239, 247 (1997)); *see also State v. Misner*, 2007 MT 235, ¶ 24, 339 Mont. 176, ¶ 24, 168 P.3d 679, ¶ 24 (Because the defendant made no objection to the prosecutor's remarks when they were made, but instead objected for the first time in a motion for a new trial, we concluded that the defendant waived his claim of prosecutorial misconduct, and we held that the district court did not abuse its discretion in denying the motion for a new trial.); *State v. Paoni*, 2006 MT 26, ¶ 16, 331 Mont. 86, ¶ 16, 128 P.3d 1040, ¶ 16 ("A defendant waives an objection and may not seek appellate review when a defendant fails to make a contemporaneous objection to an alleged error in the trial court.").

¶46 McWilliams argues on appeal that under § 46-16-702, MCA, he had 30 days following the trial "to bring forward arguments that there were either procedural improprieties at trial, or improper statements on the part of the prosecution, or any other irregularities . . . ." However, the problem here is not with the timeliness of McWilliams' motion for a new trial, but with the timeliness of his objections to the prosecutor's statements.

¶47 Because McWilliams' trial counsel failed to contemporaneously object during the prosecution's closing argument, the objection was waived and we will not consider this issue any further.

**Issue 4.**

15

¶48    *Whether the District Court erred in sentencing McWilliams to pay restitution of sums that had been discharged by his bankruptcy proceeding.*

¶49    The District Court ordered McWilliams to pay restitution to Johns and Curry in the amount of the bad checks that McWilliams had written to them.  McWilliams argues on appeal that he cannot be ordered to pay restitution to Johns and Curry because those debts were discharged in his bankruptcy proceeding.  He maintains that although the automatic stay provisions of the Bankruptcy Code do not apply to a criminal action or proceeding against a debtor, "[a]n action calculated to collect on a dischargeable debt is distinguishable from a criminal prosecution."  He further maintains that since relief from the automatic stay was not requested by any of his creditors following the conversion of his bankruptcy, the criminal prosecution should not be used as a vehicle to collect sums that were discharged in that proceeding.  McWilliams contends that the criminal prosecution was a subterfuge for the collection of the discharged debts.

¶50    McWilliams had been operating his business as a sole proprietorship under a confirmed plan of reorganization pursuant to 11 U.S.C. § 1325, since 1997.  He converted this Chapter 13 bankruptcy to a Chapter 7 on January 24, 2002.  McWilliams contends that at the time he converted to Chapter 7, the debts he and his wife incurred to that point, including the amounts owed to Johns and Curry, were added to the debtors' creditor list and those creditors were duly notified of the applicability of the stay.  McWilliams further contends that Johns and Curry failed to petition for relief from the automatic stay prior to bringing their complaints to the Park County Attorney and the

Park County Attorney brought criminal charges against McWilliams in an attempt to collect on debts that had already been discharged in the bankruptcy proceedings.

¶51 Under 11 U.S.C. § 362(a), the commencement of a proceeding under the Bankruptcy Code stays all judicial proceedings against a debtor which could have been brought before the commencement of the case, except in those cases specifically enumerated in 11 U.S.C. § 362(b). *In re Hartung*, 258 B.R. 210, 213 (Bankr. D. Mont. 2000) (citing *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990)). The automatic stay "is designed to effect an immediate freeze of the *status quo* by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor . . . ." *Hartung*, 258 B.R. at 213 (quoting *Hillis Motors, Inc. v. Hawaii Auto Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993)).

¶52 Moreover, the automatic stay is self-executing and is effective upon the filing of the bankruptcy petition. *In re Gruntz*, 202 F.3d 1074, 1081 (9th Cir. 2000) (citing 11 U.S.C. § 362(a); *In re Minoco Group of Companies, LTD*, 799 F.2d 517, 520 (9th Cir. 1986)).

> The automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations. By halting all collection efforts the stay affords the debtor time to propose a reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. The automatic stay also assures creditors that the debtor's other creditors are not racing to various courthouses to pursue independent remedies to drain the debtor's assets.

*Gruntz*, 202 F.3d at 1081 (internal citations and quotation marks omitted).

¶53    Nevertheless, in *Gruntz*, the Ninth Circuit Court of Appeals pointed out that although the automatic stay is extremely broad, there are a number of statutory exceptions. *Gruntz*, 202 F.3d at 1084. One such exception provides that the filing of a petition under the Bankruptcy Code "does not operate as a stay . . . of the commencement or continuation of a criminal action or proceeding against the debtor." *Gruntz*, 202 F.3d at 1085 (citing 11 U.S.C. § 362(b)(1)). Moreover, the Ninth Circuit held in *Gruntz* that the automatic stay does not apply to criminal proceedings even if the debtor asserts that the underlying purpose of the criminal proceedings is simple debt collection. *Gruntz*, 202 F.3d at 1087.

> [A]ny criminal prosecution of the debtor is on behalf of all the citizens of the state, not on behalf of the creditor. Once the state has made an independent decision to file criminal charges, the prosecution belongs to the government, not to the complaining witness. We cannot, and should not, require a prosecutor to conduct a searching inquiry into the public spirit of the victim of a crime before proceeding with what appears to be an otherwise valid criminal prosecution. In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.

*Gruntz*, 202 F.3d at 1086 (internal citations and quotation marks omitted).

¶54    In the case before us on appeal, the State points out, and we agree, that writing bad checks is a criminal offense and the action brought by the County Attorney was a criminal prosecution within the meaning of 11 U.S.C. § 362(b)(1), and is, as the Ninth Circuit held in *Gruntz*, an exception to the automatic stay.

¶55    McWilliams argues that *Gruntz* is not applicable to this case because the reason the Ninth Circuit took the action it did in *Gruntz* was because the criminal proceeding in

18

*Gruntz* dealt with nonpayment of child support, which is not a dischargeable debt in bankruptcy. However, the Ninth Circuit did not limit its holding in *Gruntz* to only child support proceedings. On the contrary, it specifically stated that the automatic stay does not apply to criminal proceedings. *Gruntz*, 202 F.3d at 1087. Furthermore, the United States Bankruptcy Court for the District of Montana, relying on the Ninth Circuit's holding in *Gruntz*, came to the same conclusion in another case involving the issuance of a bad check. *Hartung*, 258 B.R. at 215.

¶56 McWilliams cites numerous cases in support of his theory that courts must look at whether the intent of the criminal prosecution is to vindicate the public good or to collect a debt. However, all of the cases McWilliams cites for this proposition predate the Ninth Circuit's determination in *Gruntz* that the automatic stay does not apply to criminal proceedings *even if the debtor asserts that the underlying purpose of the criminal proceedings is simple debt collection*. *Gruntz*, 202 F.3d at 1087.

¶57 McWilliams failed to mention in his brief on appeal that he had already applied to the United States Bankruptcy Court for the District of Montana for a temporary restraining order under F. R. Civ. P. 65 and a preliminary injunction under 11 U.S.C. § 105(a) to enjoin the State "from taking any steps in furtherance of criminal prosecution" against him. *McWilliams v. DePuy, et al.*, Case No. 97-21378-7 (Bankr. D.Mont. 2004). The Bankruptcy Court dismissed the proceeding based on the holdings in *Gruntz* and *Hartung*, and the exception from the automatic stay in 11 U.S.C. § 362(b)(1). In so doing, the Bankruptcy Court noted that "the only fair reading of the Bankruptcy Code is that Congress did not intend the § 362(a) stay to enjoin all state

19

criminal proceedings automatically. 'The bankruptcy courts were not created as a haven for criminals.' " *McWilliams*, p.4 (quoting *Gruntz*, 202 F.3d at 1087; *Barnette v. Evans*, 673 F.2d 1250, 1251 (11th Cir. 1982); *Hartung*, 258 B.R. at 215).

¶58 Accordingly, we hold that the District Court did not err in ordering McWilliams to pay restitution to Johns and Curry.

¶59 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ JIM RICE

Justice W. William Leaphart, specially concurring.

¶60 I concur in the Opinion of the Court. I write separately to point out the inconsistencies inherent in the provisions of § 46-16-702, MCA, discussed by the Court in resolution of Issue 3. Section 46-16-702, MCA, allows a defendant to request a "new trial" following a verdict or finding of guilty. The statute provides that, if justified by law and the "weight of the evidence," the court may: (a) deny the motion, (b) grant a new trial, or (c) modify the verdict, find the defendant guilty of a lesser included offense or find the defendant not guilty. Section 46-16-702(3)(a)-(c), MCA.

¶61 As to subsection b (granting a new trial), the statute creates a constitutional anomaly. If a court, having weighed the evidence, concludes that there is insufficient

20

evidence to justify a guilty verdict, the court cannot, as contemplated by the statute, grant a new trial. To do so would contravene the double jeopardy clauses of the United States and Montana Constitutions. U.S. Const. amend. V; Mont. Const. art. II, § 25. When there is insufficient evidence to support a guilty verdict, the court must find the defendant not guilty, at which point the defendant cannot be subjected to further jeopardy. *See Monge v. California*, 524 U.S. 721, 727-28, 118 S. Ct. 2246, 2250 (1998); *State v. Barker*, 260 Mont. 85, 91, 858 P.2d 360, 363 (1993).

¶62 Our code of criminal procedure is deficient in that it does not provide for a judgment notwithstanding the verdict. Rather it requires a defendant who believes that that there is insufficient evidence to support a guilty verdict to file a motion for a "new trial" under § 46-16-702, MCA, when, in fact, the defendant does not want a new trial but rather a judgment of acquittal. Although motions for judgment notwithstanding the verdict are not contemplated by the code of criminal procedure, I completely understand why counsel continue to file such motions. Why should defense counsel be put in the untenable position of having no option but to file a motion for a "new trial" and then having to argue to the court, "The double jeopardy clause precludes the court from again placing my client in jeopardy by granting him/her a new trial"?

/S/ W. WILLIAM LEAPHART


Justice Jim Nelson joins the concurring opinion of Justice Leaphart.

/S/ JAMES C. NELSON