# FILED

November 16 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 10-0136

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 244

IN THE MATTER OF:

S.F., Jr.,

    A Youth.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DJ 09-08
Honorable Deborah Kim Christopher, Presiding Judge

    For Appellant:

    Joslyn Hunt, Chief Appellate Defender, Helena, Montana

    For Appellee:

    Steve Bullock, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

    Mitch Young, Lake County Attorney, J. Cory Allen, Deputy County
Attorney, Polson, Montana

Submitted on Briefs:  October 20, 2010

Decided:  November 16, 2010

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    S.F., Jr., (hereinafter S.F.) was 14 years old on or around May 23, 2009, when he and another youth, G.S., allegedly broke into a home and stole the keys to a van, a laptop computer, and the van parked in the driveway. In August 2009, the Lake County Attorney's Office filed a four-count petition with the Twentieth Judicial District Court seeking to declare S.F. a delinquent youth and serious juvenile offender. Subsequently, S.F. pled guilty to one felony burglary charge and one misdemeanor unauthorized use of a motor vehicle charge. With respect to the remaining two counts, the court found him guilty of one felony theft charge. He was sentenced to serve time at Pine Hills Correctional Facility and to pay restitution. He appeals the court's ruling. We affirm.

## ISSUES

¶2    A restatement of the issues on appeal is:

¶3    Did the District Court err in denying S.F.'s motion for a directed verdict?

¶4    Did the District Court err in imposing a restitution obligation on S.F.?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    On or around May 23, 2009, 14-year-old S.F. and G.S., 16 years old, had been drinking and walking around Polson, Montana. At some time during that evening, the two boys went to the home of the Elliott family. While the family slept and S.F. purportedly kept watch, G.S. entered the home through a back door and stole a laptop computer and the keys to the family's van. The boys then took the van and went joyriding. G.S. was the primary driver that night but S.F. drove the van for a short while. Ultimately, G.S. fell asleep or passed out while driving and crashed the van into a tree.

2

¶6    In August 2009, the Lake County Attorney's Office filed a petition with the Twentieth Judicial District Court seeking to declare S.F. a delinquent youth and serious juvenile offender. The petition alleged S.F. had committed two counts of felony burglary and two counts of felony theft.

¶7    A hearing on the State's petition was held on December 10, 2009. At the beginning of the hearing, the parties agreed to amend one count of felony theft to misdemeanor unauthorized use of a motor vehicle. The court accepted the change. S.F. then pled guilty to one count of felony burglary and one count of unauthorized use of a motor vehicle. After accepting the plea, the court conducted a hearing and heard witness testimony on the remaining counts of felony burglary and felony theft. At the conclusion of the State's case, S.F. moved for a directed verdict. The District Court granted S.F.'s motion vis-à-vis the felony burglary charge but denied it vis-à-vis the felony theft charge. Ultimately, the court ruled S.F. was guilty of felony theft. At a subsequent disposition hearing on January 14, 2010, the court declared S.F. to be a delinquent youth and a serious juvenile offender. He was sentenced to Pine Hills Correctional Facility until he was 18 years old, or sooner released, and was ordered to pay restitution for a $30 towing charge and $3,459.31 in damages to the Elliotts' van. The court indicated S.F. was jointly and severally liable for the vehicle damage with G.S. He filed a timely notice of appeal.

**STANDARD OF REVIEW**

¶8     We deem S.F.'s motion for a directed verdict as a motion to dismiss for insufficient evidence. We review such motions de novo. *State v. McWilliams*, 2008 MT 59, ¶¶ 35-37, 341 Mont. 517, 178 P.3d 121.

¶9     We review whether the sentencing court had statutory authority to impose the sentence, whether the sentence falls within the parameters set by the applicable sentencing statutes, and whether the court adhered to the affirmative mandates of the applicable sentencing statutes for legality. This determination is a question of law and, as such, our review is de novo. *State v. Breeding*, 2008 MT 162, ¶ 10, 343 Mont. 323, 184 P.3d 313 (internal citations omitted).

## DISCUSSION

¶10    *Did the District Court err in denying S.F.'s motion for a directed verdict?*

¶11    As noted above, the District Court found S.F. guilty of theft in violation of § 45-6-301(1)(a), MCA (2007), i.e., the statute in effect at the time the crime was committed. This statute provides that "[a] person commits the offense of theft when the person purposely or knowingly obtains or exerts unauthorized control over property of the owner and has the purpose of depriving the owner of the property." Additionally, under the 2007 statute in effect in May 2009, if the value of the stolen property exceeded $1,000, the theft was a felony. Sections 45-6-301(8)(b) and 45-2-101(23), MCA (2007). S.F. argues on appeal that the State did not provide sufficient evidence that he had committed this offense. He asserts that the statute contemplates an "actual taking" rather than mere possession of stolen property. S.F. claims that he did not actually take the vehicle or the laptop computer, nor did he cause damage to the vehicle. He further opines

4

that the State did not prove that he actually obtained or exerted control of the van; therefore, he should not have been convicted of theft.

¶12 In response, the State focuses its argument on S.F.'s guilt of theft by accountability, with little more than passing reference to any legal justification for a theft conviction. However, the State did not charge S.F. with accountability nor was he convicted of accountability. We will therefore disregard all arguments made by the State with respect to S.F.'s guilt of theft by accountability.

¶13 To determine whether the District Court erred in denying S.F.'s motion to dismiss, we must determine whether the court had sufficient evidence to conclude that S.F. purposely or knowingly exerted unauthorized control over the Elliotts' property with the purpose of depriving the Elliotts of the property. As indicated above, the undisputed evidence presented to the District Court revealed that on or around May 23, S.F .and G.S. went to the Elliotts' home and left with a laptop computer and the family's van. They each drove the van but G.S. was the primary driver. G.S. ultimately fell asleep or passed out while driving and drove the van into a tree. While there was some dispute as to whether S.F. entered the Elliotts' home or merely stood outside the door keeping watch, that distinction is irrelevant to our analysis. The elements of theft simply require that a person "purposely or knowingly" "obtains or exerts unauthorized control" over the property of another with the "purpose of depriving the owner of the property." These relevant terms are defined in § 45-2-101, MCA (2007).

¶14 Section 45-2-101(65), MCA (2007), defines "purposely" as:

a person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is the person's conscious object to engage in that conduct or to cause that result. When a particular purpose is an element of an offense, the element is established although the purpose is conditional, unless the condition negatives the harm or evil sought to be prevented by the law defining the offense. Equivalent terms, such as "purpose" and "with the purpose", have the same meaning.

"Knowingly" is defined at § 45-2-101(35), MCA (2007), as:

a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when the person is aware of the person's own conduct or that the circumstance exists. A person acts knowingly with respect to the result of conduct described by a statute defining an offense when the person is aware that it is highly probable that the result will be caused by the person's conduct. When knowledge of the existence of a particular fact is an element of an offense, knowledge is established if a person is aware of a high probability of its existence. Equivalent terms, such as "knowing" or "with knowledge", have the same meaning.

"Obtains or exerts [unauthorized] control" as defined by § 45-2-101(46), MCA (2007), "includes but is not limited to the taking, the carrying away, or the sale, conveyance, or transfer of title to, interest in, or possession of property." Lastly, "deprive" means to "(a) withhold property of another: (i) permanently; (ii) for such a period as to appropriate a portion of its value; or (iii) with the purpose to restore it only upon payment of reward or other compensation; or (b) to dispose of the property of another and use or deal with the property so as to make it unlikely that the owner will recover it." Section 45-2-101(20), MCA (2007).

¶15 Applying these definitions to the evidence of S.F.'s role in this case, it cannot be disputed that S.F. knowingly participated in taking the Elliotts' van—whether he entered the Elliotts' home or simply stood guard. He knew the van did not belong to him or G.S.,

6

he knew G.S. obtained the keys and they both left the residence in the van, and he knew they did not have permission or authority from the van's owners. He actively exerted control over the van when he drove it. He knew that during their possession of the van, the rightful owners did not have possession of or use of their van, thereby depriving the owners of their property. And, while unintentional, the subsequent damage to the van during their unauthorized possession ultimately deprived the rightful owners of their property for a significant period of time.

¶16 While the State could have charged S.F. under § 45-6-301(3), MCA (2007), (knowingly obtaining control over stolen property) and § 45-2-301, MCA (2007), (accountability for the conduct of another), there existed sufficient evidence to conclude that S.F.'s conduct satisfied the elements of felony theft under § 45-6-301(1)(a), MCA (2007). As such, the District Court did not err in denying his motion to dismiss for lack of sufficient evidence.

¶17 *Did the District Court err in imposing a restitution obligation on S.F.?*

¶18 At a disposition hearing on January 14, 2010, the District Court ordered S.F. to pay $30 restitution for the towing charge incurred after the van was wrecked. This restitution obligation arose out of S.F.'s guilty plea to unauthorized use of a motor vehicle. Additionally, the court, having concluded that S.F. was guilty of felony theft, ordered him to pay restitution of $3,459.31 on that charge. The court stated that S.F. was "jointly and severally liable for restitution" with G.S. At such time as the court made this pronouncement, S.F.'s attorney replied, "I guess we'll agree with that. We would also

ask that the two restitution amounts be separated because we intend to explore the possibility of an appeal on the $3,459.31, that element that he was convicted of."

¶19　S.F. argues that restitution was erroneously imposed because the damage to the van was caused exclusively by G.S. and not by the "theft of the van by S.F." S.F. asserts that "[d]uring the brief timeframe that [he] was driving the van, no damage to the van occurred." S.F. relies upon *State v. Beavers*, 2000 MT 145, 300 Mont. 49, 3 P.3d 614 (overruled in part by *State v. Herman*, 2008 MT 187, ¶ 12, 343 Mont. 494, 188 P.3d 978) and *Breeding* to support his argument that the imposition of restitution was error.

¶20　In *Beavers*, Beavers admitted that she accepted property that she knew was stolen in exchange for illegal drugs. *Beavers*, ¶ 4. She was charged with, among other things, possession of stolen property. After Beavers entered into a plea agreement that did not require payment of restitution, the district court ordered her to pay restitution to the victims of the burglaries even though she "did not actually steal the property" nor was "the pecuniary loss sustained by the victims . . . [the] result of Beavers' offense." *Beavers*, ¶ 9. We vacated the restitution order and remanded the matter to the district court. We reasoned that, under § 46-18-241(1), MCA (1997), Beavers' knowing receipt of stolen property met the "causal standard" justifying payment of restitution for the stolen property she actually received. However, we held that she could not be held responsible for restitution on property stolen by others and for which she never received or possessed. *Beavers*, ¶ 11.

¶21　Concentrating on our statement, "[a] defendant may not be ordered to pay restitution in excess of the damages caused by his criminal conduct" (*Beavers*, ¶ 12), S.F.

8

appears to argue that because he was not driving the stolen vehicle when it hit the tree, the District Court cannot require him to pay restitution. We disagree. While in S.F.'s opinion this single statement would relieve him of a restitution obligation, the case as a whole actually supports the imposition of restitution on S.F. In *Beavers*, Beavers did not participate in any way in the theft of the goods she ultimately received but was still required to pay restitution. Conversely, S.F. actively participated in the theft of the Elliotts' van and computer, he participated in "possession" of the van for the many hours he and G.S. drove it around, and he "controlled" the van during the time he drove it. He admitted to felony burglary and was found guilty of felony theft. Under *Beavers*, this admission and finding "are sufficient to satisfy the causal standard of § 46-18-241(1), MCA . . . ." *Beavers*, ¶ 11. Whether or not he wrecked the van is irrelevant.

¶22 In *Breeding*, Ryan Seghetti stole a Jeep and drove it to his friend "Matt's" house. Breeding was at Matt's house when Seghetti arrived. Seghetti told Matt and Breeding that the Jeep belonged to his uncle. The three drove around for a while and Seghetti decided to drive the Jeep off-road. While driving through a field, he hit a snow-covered haystack, causing significant body damage to the Jeep's front-end. *Breeding*, ¶¶ 2, 3 and 18. It was after this accident that Seghetti admitted that the Jeep did not belong to his uncle, and that he had stolen it from an alley in downtown Bozeman. *Breeding*, ¶ 18. While damaged, the Jeep was still drivable and Seghetti drove Matt back home. Breeding then suggested that they drive the Jeep to California to see Breeding's father. *Breeding*, ¶ 3. During the trip to California, both Seghetti and Breeding drove. Once in

9

San Diego, Seghetti was stopped by police for a broken turn signal. The theft was detected and the Jeep was impounded to be returned to its rightful owner. *Breeding*, ¶ 3.

¶23 Seghetti and Breeding were arrested. Subsequently, Breeding pled guilty to felony theft. *Breeding*, ¶ 4. As part of Breeding's sentence, the district court determined that Breeding was jointly and severally liable for restitution claims on the Jeep. The court ordered Breeding to pay $7,082.42—$5,673.53 for the damages to the Jeep from the off-road accident, and the remaining amount for other restitution expenses requested by the owner of the Jeep. *Breeding*, ¶ 8. On appeal, Breeding argued he should not be responsible for damage restitution because he was not driving the vehicle at the time it was damaged, nor did he even know the vehicle was stolen at that time. *Breeding*, ¶ 16. We agreed and remanded the matter to the district court with instructions to strike the off-road accident portion of the restitution obligation from Breeding's sentence. *Breeding*, ¶ 20.

¶24 Again, as with *Beavers*, this case does not help S.F. Just as Breeding was responsible for all restitution obligations incurred *after* he learned that the Jeep was stolen and while "possessing" the Jeep during the drive to California, S.F. is responsible for all restitution obligations arising from his initial participation in stealing the Elliotts' van, including damages to the van incurred, whether he was driving or not.

¶25 Having found S.F. guilty of theft, it was appropriate for the District Court to determine whether restitution was required under the applicable statute. Under § 46-18-241(1), MCA (2007), "a sentencing court **shall**, as part of the sentence, require

10

an offender to make full restitution to any victim who has sustained pecuniary loss . . . ."

(Emphasis added.)  The District Court did not err in so ruling.

## CONCLUSION

¶26     For the foregoing reasons, we affirm the judgment of the District Court.


/S/ PATRICIA COTTER


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE